David P. Billings (11510)
**FABIAN VANCOTT**
95 South State Street, Suite 2300
Salt Lake City, UT 84111
Telephone: (801) 323-2205
dbillings@fabianvancott.com

David R. Fox*
Christopher D. Dodge*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
Telephone: (202) 968-4490
dfox@elias.law
cdodge@elias.law

Walker McKusick*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
Telephone: (206) 656-0177
wmckusick@elias.law
*Counsel for Proposed Intervenors*

* *Pro Hac Vice Applications Forthcoming*

---

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DEIDRE M. HENDERSON, in HER official capacity as Lieutenant Governor and chief election office for the State of Utah,<br><br>Defendant. | **MOTION TO INTERVENE AS DEFENDANTS**<br><br>Case No. 2:26-cv-0166-DAO<br><br>Magistrate Judge Daphne A. Oberg |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

    I.   Federal law has long made voter list maintenance the responsibility of States. ................. 2

    II.  DOJ seeks to amass a nationwide voter registration database. ........................................... 3

    III. DOJ sues Utah to obtain its voter registration list. ............................................................ 4

    IV. DOJ's suit threatens to harm NAACP, NAACP Tri-State, and their members. ................. 5

LEGAL STANDARD ......................................................................................................... 6

ARGUMENT ...................................................................................................................... 6

    I.   NAACP and NAACP Tri-State are entitled to intervene under Rule 24(a)(2). ................. 6

    II.  Alternatively, movants should be granted permissive intervention. ................................. 10

CONCLUSION ................................................................................................................... 10

i

# TABLE OF AUTHORITIES

**Federal Cases**                                                                              **Page(s)**

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
　570 U.S. 1 (2013) ................................................................................................ 2, 3

*Bellitto v. Snipes*,
　935 F.3d 1192 (11th Cir. 2019) .............................................................................. 10

*Bellitto v. Snipes*,
　No. 16-cv-61474, 2016 WL 5118568 (S.D. Fla. Sep. 21, 2016) ............................ 10

*Berger v. N.C. State Conf. of the NAACP*,
　597 U.S. 179 (2022) ............................................................................................ 1, 9

*City of Chicago v. FEMA*,
　660 F.3d 980 (7th Cir. 2011).................................................................................. 10

*Clark v. Putnam County*,
　168 F.3d 458 (11th Cir. 1999) ................................................................................ 10

*Foster v. Love*,
　522 U.S. 67 (1997) ................................................................................................... 2

*Fund for Animals, Inc. v. Norton*,
　322 F.3d 728 (D.C. Cir. 2003) ................................................................................. 9

*Husted v. A. Philip Randolph Inst.*,
　584 U.S. 756 (2018) ................................................................................................. 3

*In re Sealed Case*,
　237 F.3d 657 (D.C. Cir. 2001) ................................................................................. 7

*Issa v. Newsom*,
　No. 2:20-CV-01044-MCE-CKD, 2020 WL 3074351 (E.D. Cal. June 10, 2020)...................... 8

*Jud. Watch, Inc. v. Ill. State Bd. of Elections*,
　No. 24 C 1867, 2024 WL 3454706 (N.D. Ill. July 18, 2024) ............................ 8, 10

*Kalbers v. Dep't of Just.*,
　22 F.4th 816 (9th Cir. 2021).................................................................................... 7

*Kane County v. United States*,
　928 F.3d 877 (10th Cir. 2019)................................................................... 6, 7, 9, 10

*Kennedy v. Lynd*,
　306 F.2d 222 (5th Cir. 1962)................................................................................... 5

*Paher v. Cegavske*,
    No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365 (D. Nev. Apr. 28, 2020)........................ 8

*United States v. Benson*,
    --- F. Supp. 3d ----, No. 1:25-CV-01148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026)......... 4

*United States v. Benson*,
    No. 1:25-cv-01148, 2025 WL 3520406 (W.D. Mich. Dec. 9, 2025).................................... 2, 7

*United States v. Oregon*,
    No. 6:25-cv-01666, 2025 WL 3496571 (D. Or. Dec. 5, 2025).............................................. 2, 7

*United States v. Oregon*,
    No. 6:25-CV-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026)................................................. 4

*United States v. Weber*,
    --- F. Supp. 3d ----, No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) .............. 4

*Utah Ass'n of Cntys. v. Clinton*,
    255 F.3d 1246 (10th Cir. 2001).......................................................................................... 9

*Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.*,
    801 F. Supp. 553 (D. Utah 1992) ..................................................................................... 11

*Utahns for Better Transp. v. U.S. Dep't of Transp.*,
    295 F.3d 1111 (10th Cir. 2002).......................................................................................... 8

*WildEarth Guardians v. U.S. Forest Serv.*,
    573 F.3d 992 (10th Cir. 2009)............................................................................................ 9

## Federal Statutes

52 U.S.C. § 20507(a) ......................................................................................................... 3

52 U.S.C. § 21083(a)(1)...................................................................................................... 3

## Other Authorities

Fed. R. Civ. P. 24(b) ................................................................................................. 2, 6, 10

H.R. Rep. No. 86-956 (1959)............................................................................................. 5

U.S. Const. art. I, § 4, cl. 1................................................................................................ 2

Utah Code Ann. § 63G-2-302(1)(j) .................................................................................. 8

## STATEMENT OF RELIEF REQUESTED AND GROUNDS FOR RELIEF

The National Association for the Advancement of Colored People ("NAACP") and National Association for the Advancement of Colored People Tri-State Conference of Idaho, Nevada, and Utah ("NAACP Tri-State") move to intervene as defendants as of right under Rule 24(a)(2) or, alternatively, on a permissive basis under Rule 24(b).

## INTRODUCTION

The U.S. Department of Justice has embarked on an unprecedented campaign to compile the nation's voter rolls in a centralized federal database. To that end, DOJ sued Utah on February 26, seeking to compel the State to turn over its complete voter rolls, which include sensitive personal information on every registered Utahn. This legal assault not only intrudes upon Utah's constitutional prerogative to maintain its own voter registration list—it tramples the privacy rights of Utah voters. Worse still, this intrusion is not based on any shortcoming by Utah—the State is now subject to one of *thirty* lawsuits DOJ has brought as part of its scorched earth campaign to nationalize the country's voter rolls. NAACP and NAACP Tri-State move to intervene to defend against the federal government's overreach and to preserve the privacy rights of its constituents.

Both organizations satisfy the requirements for intervention under Rule 24(a)(2). NAACP, NAACP Tri-State, and their hundreds of Utah members, have significant protectable interests threatened by the relief DOJ seeks, including the compelled disclosure of sensitive personal information and the frustration of NAACP and NAACP Tri-State's civic engagement work. The existing governmental defendant—Lieutenant Governor Deidre M. Henderson—does not adequately represent these private interests. As a public officer, she must "bear in mind broader public-policy implications," whereas NAACP and NAACP Tri-State seek to vindicate their own rights, and those of their members—"full stop." *Berger v. N.C. State Conf. of the NAACP*, 597

1

U.S. 179, 196 (2022). Because this motion is also timely, Rule 24(a)(2) is satisfied. This Court should therefore join many of its peers from DOJ's parallel suits in concluding that intervention as of right is warranted.[1]

Alternatively, movants should be granted permissive intervention under Rule 24(b). This motion is timely; its movants' participation will not cause prejudice or delay; and they raise defenses "that share[] with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Granting intervention will ensure that Utah voters have a voice in this litigation over the disclosure of their sensitive and personal information. Moreover, because various NAACP state conferences are participating in parallel cases around the country, NAACP Tri-State's involvement will aid the Court in fully developing the legal and factual issues in this interrelated set of suits. Several courts have granted NAACP and its state conferences intervention for these reasons.[2]

## BACKGROUND

### I.    Federal law has long made voter list maintenance the responsibility of States.

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, including determining voter eligibility and maintaining voter lists, subject to Congress's power to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013); *see also* U.S. Const. art. I, § 4, cl. 1. And while Congress has enacted laws governing voter registration, these laws augment, rather than

---

[1] *E.g.*, Minute Order, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 19, 2025), ECF No. 70 (granting NAACP and NAACP state conference, along with other civic organizations, intervention as of right); *United States v. Oregon*, No. 6:25-cv-01666, 2025 WL 3496571 (D. Or. Dec. 5, 2025) (similar); *United States v. Benson*, No. 1:25-cv-01148, 2025 WL 3520406 (W.D. Mich. Dec. 9, 2025) (similar).

[2] *E.g.*, Minute Order, *United States v. Nago*, No. 1:25-cv-00522 (D. Haw. Jan. 5, 2026), ECF No. 20 (granting NAACP conference intervention); Electronic Order, *United States v. Galvin*, No. 1:25-cv-13816 (D. Mass. Jan. 6, 2026), ECF No. 30 (similar).

2

displace, existing "state voter-registration systems," *Inter Tribal Council of Ariz.*, 570 U.S. at 5, and confirm that States are the custodians of voter registration data. The National Voter Registration Act ("NVRA"), charges *States*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a). And the Help America Vote Act ("HAVA") regulates how *States* maintain their voter rolls, requiring them to create a "computerized statewide voter registration list." 52 U.S.C. § 21083(a)(1). HAVA is clear that this list is to be "defined, maintained, and administered at the State level." *Id.* § 21083(a)(1)(A).

Neither the NVRA nor HAVA tasks the federal government with compiling a federal national voter registration list. Congress has instead "left it up to the States to maintain accurate lists of those eligible to vote in federal elections," *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018), subject only to the specific requirements of the NVRA and HAVA.

## II.    DOJ seeks to amass a nationwide voter registration database.

In the spring of 2025, DOJ began demanding unprecedented access to state voter files. To date, DOJ has sent demands to more than forty States, with plans to make similar demands on all fifty.[3] It seeks to use the data to create a national voter database that will, in course, be used in an effort to prop up President Trump's unfounded accusations that millions of non-citizens have voted in recent elections. *See supra* note 3. Most States have refused to comply with DOJ's demands, choosing instead to uphold state-level privacy laws protecting sensitive voter information.[4]

As a result, DOJ has now filed thirty lawsuits against state election officials to compel

---

[3] *See* Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Mar. 4, 2026), https://perma.cc/2YQ6-7HAR; Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://perma.cc/8VP4-WRXD.
[4] *See* Martinez-Ochoa, O'Connor & Berry, *supra* note 3.

production of voter data. While DOJ has repeatedly claimed that it need not offer any justification for its demands, it reportedly seeks to use the data to compel removal of hundreds of thousands of voters from the rolls.[5] To date, DOJ's lawsuits have uniformly been dismissed by courts.[6]

### III.    DOJ sues Utah to obtain its voter registration list.

DOJ sent Lt. Gov. Henderson a letter on July 15, 2025 demanding Utah's "statewide voter registration list." Compl. ¶ 20, ECF No. 1. She responded on July 31 by providing Utah's publicly available statewide voter registration list. *Id.* ¶ 21. DOJ sent another letter on August 14 specifying that it was requesting that Utah produce "all fields" from its voter registration database, including each registrant's "full name, date of birth, address, and driver's license or last four digits of social security number." *Id.* ¶ 24. Lt. Gov. Henderson responded on August 29 noting her privacy concerns with DOJ's demands. *See id.* ¶ 26. DOJ replied in a brief email on December 2 with a proposed memorandum of understanding that it claimed would address her concerns. *Id.* ¶ 27. She responded that she would need additional time to consider DOJ's demand. *Id.* ¶ 28. Utah has, to date, not shared with the DOJ the statewide voter registration list with all fields. *Id.* ¶ 29.

DOJ sued Lt. Gov. Henderson on February 26, seeking to compel production of Utah's statewide voter registration list. The complaint alleges that Utah is violating the Civil Rights Act of 1960 ("CRA") by not relenting to DOJ's demand. Compl. ¶¶ 30–35 (citing 52 U.S.C. § 20703). But the CRA does not support DOJ's sweeping demand, as three courts have now held. *See supra* note 6. The CRA—enacted amidst the Civil Rights Movement in which the NAACP played a

---

[5] *See* AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 ET), https://x.com/AAGDhillon/status/2001659823335616795 ("You're going to see hundreds of thousands of people in some states being removed from the voter rolls.").

[6] *See United States v. Weber*, --- F. Supp. 3d ----, No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, No. 6:25-CV-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026); *United States v. Benson*, --- F. Supp. 3d ----, No. 1:25-CV-01148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026).

central part—permits DOJ to review certain voting records to investigate "question[s] concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). Congress enacted it to preserve "the right of all qualified citizens to vote without discrimination on account of race," and specifically to facilitate "investigation[s]" authorized under the Civil Rights Act of 1957, which recalcitrant local officials had frustrated through the destruction of records. H.R. Rep. No. 86-956, at 7 (1959). DOJ admits that is not its purpose here; rather it claims to be evaluating Utah's compliance with list maintenance efforts required by the NVRA and HAVA—statutes with their own separate enforcement provisions. Compl. ¶ 9.

## IV.    DOJ's suit threatens to harm NAACP, NAACP Tri-State, and their members.

The NAACP is the nation's oldest civil rights organization, with more than 200,000 members nationwide. *See* Ex. A ("Ashton Decl.") ¶¶ 4–5. NAACP Tri-State, which has hundreds of Utah members, is the state conference of the NAACP of Idaho, Nevada, and Utah. *See* Ex. B ("Williams Decl.") ¶ 3. NAACP Tri-State works in concert with the NAACP to ensure political, educational, and economic justice for Black Utahns and other marginalized groups. *Id.* Both NAACP and NAACP Tri-State have a long history of fighting for and protecting fundamental rights and voting rights of their members and constituents—including by engaging in voter outreach, education, and activism. *Id.* ¶¶ 5–7; Ashton Decl. ¶¶ 8–9. Both groups operate and support programs that encourage members and other Utah voters to participate in elections and provide assistance to voters in doing so. Williams Decl. ¶¶ 7–8; Ashton Decl. ¶¶ 8–10.

The NAACP and its members have historically been targets of political retaliation, including by the federal government, because of their advocacy efforts. Williams Decl. ¶ 11; Ashton Decl. ¶ 7. In addition, some NAACP members are immigrants and first-generation citizens who have increasingly become the targets of unwarranted scrutiny and legal action by the current

federal administration. Williams Decl. ¶ 11; Ashton Decl. ¶ 11. The NAACP has long fought to protect the civil rights and privacy rights of its members. Williams Decl. ¶ 11; Ashton Decl. ¶ 7. NAACP and NAACP Tri-State are acutely concerned that disclosure of Utah's statewide voter list will subject their members to unwanted scrutiny and investigation, discouraging current and potential future members from political participation. Williams Decl. ¶ 12; Ashton Decl. ¶ 13. DOJ's effort to obtain Utah's voter registration list therefore threatens both group's civil engagement work, as well as the privacy and voting rights of their members. Williams Decl. ¶¶ 4, 13–14; Ashton Decl. ¶¶ 13–15.

## LEGAL STANDARD

A movant "seeking to intervene as of right must establish (1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties." *Kane County v. United States*, 928 F.3d 877, 889 (10th Cir. 2019). Courts can also grant permissive intervention if the movant has "a claim or defense that shares with the main action a common question of law or fact," if doing so will not cause "undu[e] delay or prejudice." Fed. R. Civ. P. 24(b). The Tenth Circuit "has historically taken a 'liberal' approach to intervention and thus favors the granting of motions to intervene." *Kane County*, 928 F.3d at 890 (citation omitted).[7]

## ARGUMENT

**I.    NAACP and NAACP Tri-State are entitled to intervene under Rule 24(a)(2).[8]**

*Movant's interests will be impaired.* Movants satisfy the "minimal burden" of showing

---

[7] Per Rule 24(c), Movants file a Proposed Answer with this motion, *see* Ex. C, and reserve the right to file a Rule 12 motion in accordance with the schedule set by the Court.

[8] There can be no serious dispute that this motion—filed just 7 days after DOJ sued, and before defendants have appeared—is timely. *Kane County*, 928 F.3d at 890–91; Fed. R. Civ. P. 24(a).

they have protectable interests that are likely to be impaired as a "practical matter" by DOJ's suit. *Kane County*, 928 F.3d at 890–91. As noted, movants have significant protectable interests in preserving the privacy rights of their hundreds of members in Utah. *See* Williams Decl. ¶ 7. Many NAACP members do not want their information turned over to the federal government due to concerns about identity theft, data security, and reports that the federal government has failed to properly safeguard sensitive Social Security information. *Id.* ¶¶ 10, 13. Courts—including in DOJ's parallel suits—routinely find impairment of such privacy interests to satisfy Rule 24(a)(2). *E.g.*, *Oregon*, 2025 WL 3496571, at *1 (recognizing "disclosure of . . . private information contained in . . . voter registration history" demonstrated risk of impairment to protectable interest); *Benson*, 2025 WL 3520406, at *2 (similar); *see also Kalbers v. Dep't of Just.*, 22 F.4th 816, 827 (9th Cir. 2021) (recognizing "straightforward" protectable interest in confidentiality of non-public documents); *In re Sealed Case*, 237 F.3d 657, 663–64 (D.C. Cir. 2001) (finding intervenors had "legally cognizable interest in maintaining the confidentiality" of records).

Movants also have a distinct organizational interest in preserving their ability to pursue civic engagement work, such as encouraging Utahns to register to vote free from fears of intimidation, harassment, or federal intrusion. Williams Decl. ¶¶ 3, 7; Ashton Decl. ¶¶ 8–9. Movants already face challenges convincing community members who are skeptical of the electoral system and worried about improper government scrutiny to engage in the political process by registering to vote. Williams Decl. ¶¶ 12, 14; Ashton Decl. ¶¶ 7, 11. Compelled disclosure of personal data—notwithstanding the protections of state law—will make this task harder. Williams Decl. ¶¶ 12, 14; Asthon Decl. ¶¶ 13, 15; *see also* Utah Code § 63G-2-302(1)(j). That is particularly so for movants' voter registration efforts among immigrants and first-generation U.S. citizens. Williams Decl. ¶ 11. In view of the current administration's harsh treatment of immigrant

communities, many voters in those communities—even those plainly qualified to vote—have expressed hesitancy to engage in the political process due to fears of federal scrutiny and retaliation against their families and communities. *Id.*; Ashston Decl. ¶ 12. If DOJ prevails and establishes a right to intrude upon State voter registration activities at will, movants' ongoing civic engagement efforts with such communities will be harmed. Williams Decl. ¶¶ 12–14; Ashston Decl. ¶ 10. Courts recognize that groups like movants have protectable interests in preserving the efficacy of their activities, particularly around the right to vote. *E.g.*, *Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 24 C 1867, 2024 WL 3454706, at *3 (N.D. Ill. July 18, 2024); *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020); *Issa v. Newsom*, No. 2:20-CV-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020).

**Lt. Gov. Henderson does not adequately represent movants.** NAACP and NAACP Tri-State cannot be assured adequate representation of their distinct interests if they are denied intervention. The burden of showing inadequate representation is a "minimal" one requiring only that movants show that "representation *may* be inadequate" by the existing parties. *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002) (citation modified). "[W]here the purportedly adequate representative of the proposed intervenor's interest is a governmental entity," the Tenth Circuit has stressed that "the public interest the government is obligated to represent may differ from the would-be intervenor's particular interest.'" *Kane County*, 928 F.3d at 892 (citation omitted). Thus, where "the government has multiple objectives and could well decide to embrace some" goals over others in a case, it does not adequately represent private intervenors who share just some of those goals. *Id.* at 892–93 (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 997 (10th Cir. 2009)). Courts have therefore "often concluded that governmental entities do not adequately represent the interests of aspiring

intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003).

DOJ plainly does not represent NAACP and NAACP Tri-State's interests in protecting themselves and their members from the relief DOJ seeks, and while Lt. Gov. Henderson, to date, has resisted DOJ's demands, she too does not adequately represent movants' distinct private interests. In performing her public duties, she cannot "protect . . . the interest of the public [and] also the private interest of the petitioners in intervention." *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1255 (10th Cir. 2001) (citation omitted). Such "a task . . . is on its face impossible." *Id.*

As the Supreme Court has explained, officials like Lt. Gov. Henderson must "bear in mind broader public-policy implications," whereas private litigants—like movants—seek to vindicate their own rights "full stop." *Berger*, 597 U.S. at 195–96. Thus, even where the parties' interests "seem[] closely aligned," the burden to demonstrate inadequate representation remains "minimal," and with presumed adequacy limited to "certain classes of cases" such as where "a movant's interests are *identical* to those of an existing party." *Id.* at 196 (emphasis added) (citation omitted). Even if Utah opposes DOJ's suit, it does not follow that it shares the same interests as private organizations committed to voter engagement and turnout. *See id.*; *see also WildEarth Guardians*, 573 F.3d at 996 (explaining "the public interest" is not "identical to the individual parochial interest of a particular [group]" just because "both entities occupy the same posture in the litigation").

Lt. Gov. Henderson and movants do not share "identical" interests. She is obliged to enforce the NVRA and HAVA, in addition to various state voter list maintenance laws. She therefore has an obligation to weigh and carry out public duties that movants do not share. *E.g.*, *Bellitto v. Snipes*, No. 16-cv-61474, 2016 WL 5118568, at *2 (S.D. Fla. Sep. 21, 2016) (concluding "an elected official" did not adequately represent civic organization due to public obligations); *Jud. Watch*, 2024 WL 3454706, at *4 (similar); *accord Kane County*, 928 F.3d at 892. NAACP

9

Tri-State therefore does not need to "balance *competing* objectives" mandated by laws like NVRA, and will litigate this case with a specific focus on the rights of its members and other voters. *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019) (emphasis added); Williams Decl. ¶¶ 5–9.

Finally, while DOJ has filed thirty lawsuits like this one, only a handful have been directed towards officials belonging to President Trump's political party. Lt. Gov. Henderson therefore may face unique political pressure to settle this suit on terms unacceptable to movants, which supports intervention. *E.g.*, *City of Chicago v. FEMA*, 660 F.3d 980, 986 (7th Cir. 2011); *Clark v. Putnam County*, 168 F.3d 458, 462 (11th Cir. 1999) (similar). Indeed, DOJ asserted at a hearing in Minnesota on March 3, 2026 that one of the States it recently sued was seeking a settlement.

## II. Alternatively, movants should be granted permissive intervention.

This Court should alternatively exercise its discretion to grant permissive intervention. Rule 24(b) is satisfied: this motion is timely, movants will cause no delay or prejudice, and asserts a "defense that shares with the main action a common question of law or fact," and granting intervention would not "unduly delay or prejudice the adjudication" of the matter. Fed. R. Civ. P. 24(b). Movants will also aid the Court in resolving this case due to their familiarity with parallel cases, *see supra* notes 1, 2 (noting NAACP and/or its state conferences have been granted intervention in similar cases in CA, MA, HI), and by presenting the perspective of Utah voters who will be harmed by the relief DOJ seeks, *see Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.*, 801 F. Supp. 553, 572 (D. Utah 1992) (noting permissive intervention is warranted where movant will contribute to development of issues).

## CONCLUSION

NAACP and NAACP Tri-State respectfully request that this Court grant intervention.

Dated: March 5, 2026

Respectfully submitted,
*/s/ David P. Billings*

David P. Billings
**FABIAN VANCOTT**

David R. Fox*
Christopher D. Dodge*
Walker McKusick*
**ELIAS LAW GROUP LLP**
*Counsel for Proposed Intervenors*

*\* Pro Hac Vice Applications Forthcoming*

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of March 2026, the foregoing document has been filed electronically through the District of Utah ECF system, is available for viewing and downloading, and will be sent electronically to the counsel who are registered participants identified on the Notice of Electronic Filing and was sent to the following:

- **Brittany E. Bennett:** brittany.bennett@usdoj.gov; german.bonilla@usdoj.gov

- **Christopher J Gardner:** christopher.gardner@usdoj.gov; german.bonilla@usdoj.gov

I hereby further certify that on this 5th day of March 2026, I caused a true and correct copy of the foregoing to be sent via email to the following:

- **Anikka Hoidal:** ahoidal@agutah.gov; asiareid@agutah.gov; mchristesen@agutah.gov

- **Lance F. Sorenson:** lancesorenson@agutah.gov; asiareid@agutah.gov; cdsl@agutah.gov; mchristesen@agutah.gov

- **David N. Wolf:** dnwolf@agutah.gov; asiareid@agutah.gov; cdsl@agutah.gov; mchristesen@agutah.gov

*Counsel to Lt. Governor Deidre M. Henderson*