David P. Billings (11510)
**FABIAN VANCOTT**
95 South State Street, Suite 2300
Salt Lake City, UT 84111
Telephone: (801) 323-2205
dbillings@fabianvancott.com

David R. Fox*
Christopher D. Dodge*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
Telephone: (202) 968-4490
dfox@elias.law
cdodge@elias.law

Walker McKusick*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
Telephone: (206) 656-0177
wmckusick@elias.law
*Counsel for Proposed Intervenors*

* *Pro Hac Vice Applications Pending*

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| THE UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DEIDRE M. HENDERSON, in HER official capacity as Lieutenant Governor and chief election officer for the State of Utah, <br><br> Defendant. | **INTERVENORS' PROPOSED MOTION TO DISMISS** <br><br> Case No. 2:26-cv-0166-DBB-DAO <br><br> District Judge David Barlow <br><br> Magistrate Judge Daphne A. Oberg |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

    I.    Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers. ................................................................ 3

    II.   The Department of Justice has embarked on an unprecedented nationwide campaign to amass personal voter registration data held by the States. ........................................ 5

    III.  DOJ files suit to obtain Utah's unredacted voter registration list. ............................... 6

LEGAL STANDARD ......................................................................................................... 8

ARGUMENT ...................................................................................................................... 8

    I.    DOJ failed to satisfy Title III's threshold requirements of stating a valid "basis" and "purpose" for its demand. .............................................................................................. 8

          A.   DOJ did not provide any statement of the "basis" for its demand. ........................ 11

          B.   DOJ did not provide a proper "purpose" for its demand. ...................................... 13

    II.   Title III does not prohibit Utah's redaction of sensitive voter information. ................ 18

    III.  DOJ has failed to comply with the Privacy Act, which independently requires dismissal. ................................................................................................................. 21

CONCLUSION ................................................................................................................. 25

i

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alabama ex rel. Gallion v. Rogers*,
    187 F. Supp. 848 (M.D. Ala. 1960) ........................................................................... 13, 15

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
    570 U.S. 1 (2013) ............................................................................................................ 3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................................... 8

*CFPB v. Accrediting Council for Indep. Colls. & Schs. ("ACICS")*,
    854 F.3d 683 (D.C. Cir. 2017) .................................................................................. 8–10

*CFPB v. Source for Pub. Data, L.P.*,
    903 F.3d 456 (5th Cir. 2018) ..................................................................................... 9, 11

*Dutcher v. Matheson*,
    16 F. Supp. 3d 1327 (D. Utah 2014) ............................................................................ 10

*Foster v. Love*,
    522 U.S. 67 (1997) .......................................................................................................... 3

*Grutter v. Bollinger*,
    188 F.3d 394 (6th Cir. 1999) ........................................................................................ 22

*Home Depot U.S.A., Inc. v. Jackson*,
    587 U.S. 435 (2019) ...................................................................................................... 14

*Hughes v. United States*,
    584 U.S. 675 (2018) ...................................................................................................... 10

*Husted v. A. Philip Randolph Inst.*,
    584 U.S. 756 (2018) ..................................................................................................... 3–4

*In re Admin. Subpoena, No. 25-1431-019*,
    800 F. Supp. 3d 229 (D. Mass. 2025) ........................................................................... 16

*In re Coleman*,
    208 F. Supp. 199 (S.D. Miss. 1962) .......................................................................... 10, 15

*In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted] Bd. of Governors of the Fed.
    Rsrv. Sys. v. United States*,
    No. MC 26-12 (JEB), 2026 WL 710202 (D.D.C. Mar. 13, 2026) .................................. 16

*In re Subpoena, No. 25-1431-014*,
No. MC 25-39, 2025 WL 3252648 (E.D. Pa. Nov. 21, 2025) ......................................... 16

*Kan. Penn Gaming, LLC v. Collins*,
656 F.3d 1210 (10th Cir. 2011) ...................................................................................... 8

*Kennedy v. Bruce*,
298 F.2d 860 (5th Cir. 1962) ............................................................................ 10, 13, 16

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962) .................................................................................. *passim*

*League of Women Voters v. U.S. Dep't of Homeland Sec.*,
No. 25-cv-3501, 2025 WL 3198970 (D.D.C. Nov. 17, 2025) ................................... 21–24

*Obduskey v. McCarthy & Holthus LLP*,
586 U.S. 466 (2019) ...................................................................................................... 12

*Pippinger v. Rubin*,
129 F.3d 519 (10th Cir. 1997) ...................................................................................... 24

*Project Vote, Inc. v. Kemp*,
208 F. Supp. 3d 1320 (N.D. Ga. 2016) .......................................................................... 19

*Project Vote/Voting for Am., Inc. v. Long*,
682 F.3d 331 (4th Cir. 2012) ........................................................................................ 19

*Project Vote/Voting For Am., Inc. v. Long*,
752 F. Supp. 2d 697 (E.D. Va. 2010) ............................................................................ 19

*Pub. Int. Legal Found, Inc. v. Bellows*,
92 F.4th 36 (1st Cir. 2024) ........................................................................................... 19

*Pub. Int. Legal Found., Inc. v. Matthews*,
589 F. Supp. 3d 932 (C.D. Ill. 2022) ............................................................................ 19

*Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*,
996 F.3d 257 (4th Cir. 2021) ........................................................................................ 19

*Qwest Commc'ns Int'l Inc. v. FCC*,
398 F.3d 1222 (10th Cir. 2005) .................................................................................... 9

*Raja v. Ohio Sec. Ins. Co.*,
305 F. Supp. 3d 1206 (D.N.M. 2018) ........................................................................... 25

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
120 F.4th 390 (4th Cir. 2024) ....................................................................................... 4

iii

*Rotkiske v. Klemm*,
    589 U.S. 8 (2019) ................................................................................................ 17

*Smith v. City of Jackson*,
    544 U.S. 228 (2005) ........................................................................................... 20

*True the Vote v. Hosemann*,
    43 F. Supp. 3d 693 (S.D. Miss. 2014) ............................................................... 19

*United States v. Benson*,
    No. 25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026) ................... 2, 21

*United States v. Bunner*,
    134 F.3d 1000 (10th Cir. 1998) ......................................................................... 12

*United States v. Ganadonegro*,
    854 F. Supp. 2d 1068 (D.N.M. 2012) .................................................................. 9

*United States v. Oregon*,
    No. 6:25-CV-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026) ......... *passim*

*United States v. Weber*,
    No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) ......... *passim*

*Util. Air Regul. Grp. v. EPA*,
    573 U.S. 302 (2014) ........................................................................................... 14

*Voter Reference Found., LLC v. Torrez*,
    160 F.4th 1068 (10th Cir. 2025) ............................................................. 17, 19–21


**U.S. Constitution**

U.S. Const. art. I, § 4, cl. 1 ....................................................................................... 3


**Federal Statutes**

5 U.S.C. § 552a ..................................................................................... 19, 21–22, 24

18 U.S.C. § 2721 ....................................................................................................... 19

42 U.S.C. § 1971(a)–(e) (1958 & Supp. IV) ........................................................... 14

52 U.S.C. § 20501 ...................................................................................................... 3

52 U.S.C. § 20507 ......................................................................................... 4, 17–18, 20

52 U.S.C. § 20703 .......................................................................................................... 9, 20

52 U.S.C. § 21083 ...................................................................................................... 4, 11, 18

52 U.S.C. § 20701 ........................................................................................................ 7, 8, 14

52 U.S.C. § 21085 ...................................................................................................... 4, 11, 17


**State Statutes**

Utah Code § 20A-2-104(2)(a) .................................................................................... 1–2, 18–19

Utah Code § 63G-2-302(1)(j) ..................................................................................... 1–2, 18–19


**Federal Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 8


**Federal Regulations**

*Privacy Act of 1974; System of Records*, 68 Fed. Reg. 47610 (Aug. 11, 2003) ........................... 23

70 Fed. Reg. 43904 (July 20, 2005) ................................................................................... 24

82 Fed. Reg. 24147 (May 25, 2017) ................................................................................... 24


**Other Authorities**

*Basis*, *Black's Law Dictionary* (4th rev. ed. 1968) ................................................................. 10, 12

H.R. Rep. No. 107-329 (2001) ............................................................................................ 3, 4

H.R. Rep. No. 86-956 (1960) ............................................................................................ 13–15

Scalia & Garner, *Reading Law* (2012) ................................................................................. 20

*Purpose*, *Black's Law Dictionary* (4th rev. ed. 1968) ................................................................. 10

## STATEMENT OF RELIEF REQUESTED AND GROUNDS FOR RELIEF

Proposed Intervenors, National Association for the Advancement of Colored People ("NAACP") and National Association for the Advancement of Colored People Tri-State Conference of Idaho, Nevada, and Utah ("NAACP Tri-State"), submit this proposed motion to dismiss and respectfully ask that it be docketed upon their intervention, should it be granted. The proposed motion asks that this Court dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim under the Civil Rights Act of 1960.

## INTRODUCTION

The United States Department of Justice ("DOJ") seeks to build a nationwide voter registration list, a scheme not authorized by Congress and contrary to federal laws assigning States the responsibility for maintaining voter registration. To accomplish this task, DOJ has demanded that dozens of states turn over their full, unredacted voter lists, even though state laws often shield voter information on those lists—most notably driver's license numbers, social security numbers, and dates of birth—from disclosure. Utah law is no exception, guaranteeing that driver license numbers, social security numbers, email addresses, full birth dates, and phone numbers remain private from all but certain state officials. *See* Utah Code § 20A-2-104(2)(a); *see also* Utah Code § 63G-2-302(1)(j) (describing private records protections).

When Lieutenant Governor Henderson followed Utah's privacy laws and refused to acquiesce, DOJ amplified its pressure campaign by filing suit, seeking to forcibly obtain the State's voter registration list. DOJ has similarly sued 28 other States and the District of Columbia to compel the disclosure of their unredacted voter lists. Every court to have reached a decision in these cases to date has dismissed DOJ's complaints. *See generally United States v. Weber*, No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) (granting motion to

1

dismiss), *appeal docketed*, No. 26-1232 (9th Cir. Mar. 3, 2026); *United States v. Oregon*, No. 6:25-CV-01666-MTK, 2026 WL 318402, at *1 (D. Or. Feb. 5, 2026) (same), *appeal docketed*, No. 26-1231 (9th Cir. Mar. 3, 2026); *United States v. Benson*, No. 25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026) (same), *appeal docketed*, No. 26-1225 (6th Cir. Feb. 27, 2026).

In its first wave of these cases, DOJ brought three claims: under the National Voter Registration Act ("NVRA"), the Help America Vote Act ("HAVA"), and Title III of the Civil Rights Act of 1960 ("CRA"). However, in its more recent slates of complaints—including here—DOJ relies on a single cause of action brought under the CRA, which Congress enacted to combat infringement or denial of the right to vote. This landmark civil rights law does not support DOJ's attempt to compel Utah to turn over sensitive personal data of registered voters, as three other district courts have now found.

First, Title III requires DOJ to provide a statement identifying "the purpose" of its investigation and "the basis" for its determination that a violation of federal voting rights law may have occurred. But DOJ failed to offer any basis whatsoever for its demand, and its stated purpose—to assess Utah's compliance with list maintenance activities required under the NVRA and HAVA—is beyond the reach of Title III. Second, Utah law prohibits the Lieutenant Governor from furnishing certain sensitive voter data such as social security numbers or birthdates, *see* Utah Code §§ 20A-2-104(2)(a), 63G-2-302(1)(j), and Title III does not preempt those privacy protections. Finally, the Privacy Act prohibits unfettered governmental possession of individuals' personal information, and bars collection of such sensitive data until the agency has implemented procedural safeguards. DOJ has not complied with these requirements, providing an independent basis for denying its demand.

DOJ's attempt to create a federal voter registration database also runs directly contrary to the decentralized structure of our federal electoral system. *See, e.g.*, U.S. Const. art. I, § 4, cl. 1 (granting states principal authority over congressional elections). When enacting HAVA after the contested 2000 election, Congress stressed that the "dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome." H.R. Rep. No. 107-329 at 32 (2001). DOJ's attempt to assert sweeping federal authority over the management of federal elections would dismantle the careful delineation of authority over American elections, as reflected by the Constitution and long-established federal laws. The Court should therefore join its peers and dismiss the Complaint with prejudice under Rule 12(b)(6) for failure to state a claim.

## BACKGROUND

**I.     Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter, the Constitution assigns States the responsibility for determining voter eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data. As relevant here, Congress enacted the NVRA in 1993 to serve "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). The law charges States—not the federal government—with the "administration of

3

voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including maintaining voter lists (subject to strict safeguards), *id.* § 20507(c)–(g). It similarly makes states the custodians of voter lists. *See Husted*, 584 U.S. at 761. And it affords the federal government no special rights when it comes to the disclosure of voter registration records; rather, Congress drafted the NVRA to include a "public inspection" provision that affords the Executive Branch the same qualified inspection right as any member of the general public. 52 U.S.C. § 20507(i).

In the wake of the 2000 elections, Congress enacted HAVA "to improve voting systems and voter access." *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). Like the NVRA, HAVA regulates how states maintain their voter rolls, requiring them to create a "computerized statewide voter registration list." 52 U.S.C. § 21083(a)(1). It also requires states to "perform list maintenance" consistent with the NVRA. *Id.* § 21083(a)(2). HAVA is abundantly clear that this list is to be "defined, maintained, and administered *at the State level*." *Id.* § 21083(a)(1)(A) (emphasis added). Further, HAVA commands that the "specific choices on the methods of complying with" HAVA "shall be left to the discretion of the State." *Id.* § 21085. Indeed, HAVA's legislative history stressed the importance of maintaining our decentralized electoral system to preserving liberty:

> Historically, elections in this country have been administered at the state and local level. This system has many benefits that must be preserved. The dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome. This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country.

H.R. Rep. No. 107-329 at 31–32.

Consistent with that principle, neither the NVRA nor HAVA tasks the federal government with compiling a national voter registration list. Congress has instead "left it up to the States to maintain accurate lists of those eligible to vote in federal elections," *Husted*, 584 U.S. at 761,

subject only to the specific requirements of the NVRA and HAVA, which purposefully operate through the states themselves. And while HAVA requires States to create their own centralized statewide voter registration lists, nothing in the law obligates them to disclose records in any manner, including to the federal government.

**II.     The Department of Justice has embarked on an unprecedented nationwide campaign to amass personal voter registration data held by the States.**

In the spring of 2025, DOJ launched a campaign to demand broad and unprecedented access to state voter files, including sensitive and personal information about each registered voter. To date, DOJ has sent demands to more than forty States, with plans to make similar demands on all fifty.[1] The vast majority of states that have received such demands—including those led by Republican officials—have responded by declining to turn over sensitive personal information that is typically protected by state law.[2]

DOJ's pressure campaign reached Utah on July 15, 2025, when DOJ sent Lieutenant Governor Henderson a letter demanding, among other things, Utah's "statewide voter registration list." Def.'s Mot. Dismiss 31, ECF No. 18. DOJ insisted that the voter list "include all fields," including driver's license numbers and the last four digits of social security numbers. *Id*. DOJ's letter purported to be acting pursuant to the NVRA—it made no mention of either the CRA or

---

[1] *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests Information, Brennan Ctr. for Just.* (Mar. 10, 2026), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information [https://perma.cc/RTG3-XAD3]; Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html [https://perma.cc/8VP4-WRXD].

[2] *See* Martinez-Ochoa, O'Connor, & Berry, *supra* note 1 (twelve States have reportedly given or intend to give DOJ the information it seeks: Alaska, Arkansas, Indiana, Kansas, Louisiana, Mississippi, Nebraska, Ohio, South Dakota, Tennessee, Texas, and Wyoming).

HAVA. The Lieutenant Governor responded on July 31 by producing Utah's publicly available redacted statewide voter registration list. *Id*. at 41.

Unsatisfied, DOJ sent a letter on August 14 asserting that the produced list "must contain *all fields*," including "the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number." *Id.* at 42. The letter further claimed that HAVA "also provides authority" to demand Utah's unredacted voter registration list, as well as the CRA. *Id.* at 42–43. The letter included no stated basis for invoking the CRA, however, and asserted only that the "purpose of the request is to ascertain Utah's compliance with the list maintenance requirements of the NVRA and HAVA." *Id.* at 43. Finally, the letter asserted that "Congress plainly intended that DOJ be able to conduct an independent review of each state's list," which accordingly "preempted" any "statewide prohibitions" on disclosure. *Id.* at 44. DOJ's letter cited no authority for this assertion. *See id.*

Utah's Director of Elections responded on August 29, raising concerns about DOJ's purposes for demanding Utah's full voter registration list, and seeking clarification about DOJ's intended uses for the list. *See id.* at 47–49. Utah did not receive a response until December 2, when a new point of contact at DOJ responded with a proposed Memorandum of Understanding that, in DOJ's "opinion," would "satisf[y] all reasonable concerns regarding data privacy and data security." *Id.* at 50. Utah's Director of Elections replied on December 9 via email indicating Utah was continuing to consider the matter, but noting the office "share[d] the concerns of multiple Republican Secretaries of State regarding the DoJ's nationwide demand for private voter records." *Id.* at 61. Utah therefore sought "additional time" to discuss the request with peer States, *id.*, but DOJ promptly responded that request was "not acceptable." *Id.* This lawsuit followed.

III.    **DOJ files suit to obtain Utah's unredacted voter registration list.**

DOJ filed its Complaint on February 26, 2026, seeking to compel Utah to provide its full,

6

unredacted statewide voter registration list. *See generally* Compl. DOJ claims it makes its demand to ensure that Utah is complying with its list maintenance obligations under the NVRA and HAVA, *id.* ¶¶ 19–29, but fails to assert any claim under either statute, both of which provide for express enforcement mechanisms different from what DOJ demands here. Instead, DOJ asserts a solitary claim under Title III of the CRA: an unrelated law that predates the NVRA and HAVA by decades, and which permits DOJ to review certain voting "records and papers which come into [the Lieutenant Governor's] possession," 52 U.S.C. §§ 20701–20703, for the purpose of enabling investigations "concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). When DOJ first brought cases like these in September of 2025, it asserted claims under the NVRA and HAVA.[3] However, in the ensuing two dozen or so lawsuits that it filed against States seeking the same relief (including this one against Utah), DOJ has abandoned any claims under the NVRA and HAVA, choosing to rely upon the CRA alone.[4]

---

[3] *See* Compl., *United States v. Bellows*, No. 25-cv-468 (D. Me. Sep. 16, 2025); Compl., *United States v. Oregon*, No. 25-cv-1666 (D. Or. Sep. 16, 2025); Compl., *United States v. Weber*, No. 25cv-09149 (C.D. Cal. Sep. 25, 2025); Compl., *United States v. Bd. of Elections of N.Y.*, No. 25-cv-1338 (N.D.N.Y. Sep. 25, 2025); Compl., *United States v. Benson*, No. 25-cv-1148 (W.D. Mich. Sep. 25, 2025); Compl., *United States v. Simon*, No. 25-cv-3761 (D. Minn. Sep. 25, 2025); Compl., *United States v. Scanlan*, No. 25-cv-371 (D.N.H. Sep. 25, 2025); Compl., *United States v. Pennsylvania*, No. 25-cv-1481 (W.D. Pa. Sep. 25, 2025).

[4] *See* Compl., *United States v. Albence*, No. 25-cv-01453 (D. Del. Dec. 2, 2025); Compl., *United States v. DeMarinis*, No. 25-cv-03934 (D. Md. Dec. 1, 2025); Compl., *United States v. Amore*, No. 25-cv-00629 (D.R.I. Dec. 2, 2025); Compl., *United States v. Copeland Hanzas*, No. 25-cv-903 (D. Vt. Dec. 2, 2025); Compl., *United States v. Hobbs*, No. 25-cv-6078 (W.D. Wash. Dec. 2, 2025); Compl., *United States v. Griswold*, No. 25-cv-03967 (D. Colo. Dec. 12, 2025); Compl., *United States v. Nago*, No. 25-cv-00522 (D. Haw. Dec. 12, 2025); Compl., *United States v. Galvin*, No. 25-cv-13816 (D. Mass. Dec. 12, 2025); Compl., *United States v. Aguilar*, No. 25-cv-00728 (D. Nev. Dec. 2, 2025); Compl., *United States v. D.C. Bd. of Elections*, No. 25-cv-04403 (D.D.C. Dec. 18, 2025); Compl., *United States v. Raffensperger*, No. 25-cv-00548 (M.D. Ga. Dec. 18, 2025); Compl., *United States v. Matthews*, No. 25-cv-03398 (C.D. Ill. Dec. 18, 2025); Compl., *United States v. Wis. Elections Comm'n*, No. 25-cv-01036 (W.D. Wis. Dec. 18, 2025); Compl., *United States v. Fontes*, No. 2:26-cv-00066 (D. Ariz. Jan. 6, 2026); Compl., *United States v. Thomas*, No. 3:26-cv-00021 (D. Conn. Jan. 6, 2026); Compl., *United States v. Beals*, No. 26-cv-00042 (E.D.

## LEGAL STANDARD

A complaint must be dismissed where it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion-to-dismiss stage, the Court "must accept as true all of the allegations contained in a complaint" but need not accept the complaint's "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Thus, mere 'labels and conclusions'" are insufficient. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff must offer specific factual allegations to support each claim." *Id.*

## ARGUMENT

To justify its sweeping demand for sensitive voter data, DOJ relies solely on Title III of the CRA. *See* 52 U.S.C. §§ 20701, 20703. But DOJ's claim fails as a matter of law for at least three independent reasons. *First*, DOJ has not complied with the basic procedural requirements contained within Title III, namely that it provide Utah with "the basis and the purpose" of its demand. *Second*, Title III does not preempt Utah's privacy protections for highly sensitive personal data. *Third*, DOJ's attempted collection and maintenance of a database of every voter in Utah is prohibited by the federal Privacy Act. The Complaint should be dismissed with prejudice.

## IV.    DOJ failed to satisfy Title III's threshold requirements of stating a valid "basis" and "purpose" for its demand.

Governmental agencies are "not afforded 'unfettered authority to cast about for potential wrongdoing.'" *CFPB v. Accrediting Council for Indep. Colls. & Schs.* ("*ACICS*"), 854 F.3d 683, 689 (D.C. Cir. 2017) (quoting *In re Sealed Case (Admin. Subpoena)*, 42 F.3d 1412, 1418 (D.C.

---

Va. Jan. 16, 2026); Compl., *United States v. Adams*, No. 26-cv-00019 (E.D. Ky. Feb. 26, 2026); Compl., *United States v. Caldwell*, No. 26-cv-02025 (D.N.J. Feb. 26, 2026); Compl., *United States v. Ziriax*, No. 26-cv-00361 (W.D. Okla. Feb. 26, 2026), Compl., *United States v. Warner*, No. 26-cv-00156 (S.D.W. Va. Feb. 26, 2026).

Cir. 1994)). Rather, an agency's authority to demand documents and information "is a creature of statute," *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458 (5th Cir. 2018), and consequently, an agency's demand for information "must comply with statutory requirements," *id*. at 460. If an agency fails to follow the relevant statutory prerequisites for issuing a demand for information, courts will decline to order enforcement of the demand, *e.g.*, *ACICS,* 854 F.3d at 690 (declining to enforce civil investigative demand where agency failed to comply with statutory requirements); *see also Weber*, 2026 WL 118807, at *9–10 (declining to enforce Title III demand with an "inadequate statement of basis and purpose"); *Oregon*, 2026 WL 318402, at *9–10 (similar).

Title III contains a key—and fundamental—requirement that DOJ failed to follow in demanding Utah's statewide voter registration list: the statute requires that any request for records "shall contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. This requirement "is not merely perfunctory—it is a critical safeguard that ensures the request is legitimately related to the purpose of the statute." *Weber*, 2026 WL 118807, at *9. And supplying "the basis" and "the purpose" are independent requirements for a valid Title III demand: "The use of the conjunctive 'and' in the phrase [the basis and the purpose therefor] clearly indicates that" DOJ "cannot satisfy the statutory mandate by simply [providing] one or the other." *Qwest Commc'ns Int'l Inc. v. FCC*, 398 F.3d 1222, 1236 (10th Cir. 2005); *see also United States v. Ganadonegro*, 854 F. Supp. 2d 1068, 1081 (D.N.M. 2012) ("When terms are connected by a conjunctive term in a statute—such as the term 'and'—courts normally interpret the statute as requiring satisfaction of both of the conjunctive terms to trigger application of the statutory provision." (collecting authority)). For example, in *Lynd*—a case upon which DOJ places heavy reliance—the government's demand was explicitly "based" on evidence in DOJ's possession that suggested racial discrimination in voting was taking place in the relevant jurisdictions. *See* 306

F.2d at 229 n.6. The "purpose" of the demand was to determine whether such discrimination, and violations of federal voting rights law, had occurred. *Id*. Other Title III cases from that period likewise contained explicit statements of both a "basis" and "purpose" for DOJ's demand. *See Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) (per curiam).

The "basis" requirement ensures that the federal government will not unduly interfere in the States' traditional oversight of elections unless DOJ is able to state a concrete reason to believe that a state has infringed the constitutional right to vote. *See Basis, Black's Law Dictionary* (4th rev. ed. 1968) (including definitions for "basis" such as the "groundwork," "support," or "foundation" of something); *see also Dutcher v. Matheson*, 16 F. Supp. 3d 1327, 1335 (D. Utah 2014) (citing dictionary for proposition that plain meaning of "basis" is "the underlying support or foundation for an idea, argument, or process"), *aff'd*, 840 F.3d 1183 (10th Cir. 2016); *accord Hughes v. United States*, 584 U.S. 675, 686 (2018) (similar). The "basis" requirement thus advances public accountability and guards against bad-faith investigations for which DOJ cannot articulate any adequate reason for seeking a State's voting records. *Cf. ACICS*, 854 F.3d at 691 (concluding that mere citation to statutory provisions in agency's statement, "especially considering the Bureau's failure to adequately state 'the specific conduct under investigation,'" failed to sufficiently provide "statutory basis for the Bureau's investigation").

The "purpose" requirement ensures that the government's intentions for the information sought, once acquired, are legally valid, and also allows judicial evaluation of whether the demand is sensible in light of the government's stated purpose. *See Purpose, Black's Law Dictionary* (4th rev. ed. 1968) (defining "purpose" to include "an end, intention, or aim, object, plan, project"); *cf. ACICS*, 854 F.3d at 690 ("Because the validity of a CID is measured by the purposes stated in the

notification of purpose, the adequacy of the notification of purpose is an important statutory requirement." (internal citation omitted)).

Here, DOJ failed to provide either "the basis" or "the purpose" that could lawfully justify its demand, and thus its Title III claim should be dismissed. *See, e.g.*, *Source for Pub. Data*, 903 F.3d at 460 (declining to enforce a civil investigative demand because "[an agency] must comply with statutory requirements, and here it did not"); *see also Weber*, 2026 WL 118807, at *10; *Oregon*, 2026 WL 318402, at *10.

### A.   DOJ did not provide any statement of the "basis" for its demand.

DOJ's written correspondence to Utah did not provide *any* basis for its request for the State's unredacted voter registration list, let alone a basis to believe that Utah has denied the right to vote or otherwise infringed on anyone's voting rights. Neither DOJ's initial July 15 letter nor its August 14 letter articulated any "foundation" for concluding Utah's list maintenance efforts might not be "reasonable" as required by the NVRA and HAVA. 52 U.S.C. § 20507(a)(4); *id.* § 21083(a)(4); *id.* § 21085 (committing "specific choices on the methods of complying with" HAVA "to the discretion of the State"); *see* Def.'s Mot. Dismiss 31–33 (DOJ's July 15 letter), 42–44 (DOJ's August 14 letter).

The lack of a stated basis is fatal. "Simply put, [DOJ's demand] does not identify what conduct, it believes, constitute[d] an alleged violation." *Source for Pub. Data*, 903 F.3d at 458–59 (quashing civil investigative demand that failed to provide basis for investigation); *see also Oregon*, 2026 WL 318402, at *9 (dismissing because Title III demand letter "contain[ed] no statement of a factual basis"); *Weber*, 2026 WL 118807, at *9 (finding DOJ failed to "establish[] the basis for its request" because it failed to explain why it believed that California had violated the NVRA or its investigation required the unredacted voter registration list). The lack of any

11

stated basis for DOJ's investigation of *Utah* is further highlighted by the fact that DOJ has made carbon copy demands to at least 40 States and has sued nearly 30 States based on nearly identical boilerplate claims and allegations. *See* Martinez-Ochoa et al., *supra* note 1. This nationwide effort to collect State voter registration lists through judicial compulsion undermines any notion that DOJ has a "basis" for investigating Utah specifically.

DOJ appears acutely aware of this shortcoming. Its Complaint offers just a single, terse line regarding the purported "basis" of its demand: "The August 14 Letter stated the basis of the demand was the CRA." Compl. ¶ 23. DOJ apparently believes it satisfies the "basis" requirement merely by invoking the CRA itself in talismanic fashion. But the CRA is the *legal authority* under which DOJ may pursue a document demand, not the "groundwork," "support," or "foundation" for its belief that a demand is necessary. *Basis, Black's Law Dictionary* (4th rev. ed. 1968). And the term "basis" in the statutory text would be pointless if DOJ could automatically satisfy it by merely invoking the CRA itself. *Oregon,* 2026 WL 318402, at *9 ("Reading 'basis' in the way [DOJ] suggests collapses its meaning with that of 'purpose.'"). Courts "generally presum[e] that statutes do not contain [such] surplusage." *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 476 (2019) (quoting *Arlington Cent. School Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 299 n.1 (2006)); *see also United States v. Bunner*, 134 F.3d 1000, 1006 n.5 (10th Cir. 1998) (holding courts "will not construe a statute in a way that renders words or phrases meaningless, redundant, or superfluous" (quoting *Osborne v. Babbitt*, 61 F.3d 810, 813 (10th Cir. 1995))).

DOJ's argument that the CRA itself is the "basis" for the demand is also contradicted by DOJ's allegations in parallel lawsuits against other states, where DOJ did not rest on that contention alone. In many other states, DOJ has argued that it satisfied the "basis" requirement based on factual contentions concerning a given State's voter registration list maintenance

activities, as set forth in the U.S. Election Assistance Commission's "Election Administration and Voting Survey 2024 Comprehensive Report," commonly known as the "EAVS Report." *See, e.g.,* Opp'n Mot. Dismiss at 10, *Oregon*, No. 25-cv-01666, ECF No. 57 (arguing DOJ supplied a factual "basis" by pointing to EAVS data); Opp'n Mot. Dismiss at 10–11, *United States v. Bellows*, No. 1:25-cv-00468-LEW (D. Me. Jan. 2, 2026), ECF No. 75 (similar). To be sure, the EAVS Report does not actually support DOJ's efforts, but DOJ's different tack in those earlier-filed cases reflects its long-held understanding that "basis" refers to a *factual* basis for its demand, rather than a *legal authorization* for it. *See, e.g.*, *Lynd*, 306 F.2d at 229 n.6 (noting DOJ's demand was based upon "information" showing legal violation, not merely the CRA itself); *Bruce*, 298 F.2d at 861 (similarly noting DOJ's demand was "based upon information"). Yet here it cannot muster even the most skeletal factual allegations to suggest Utah is violating any federal list maintenance requirement. DOJ's effort to turn the "basis" requirement into a nullity here purely for convenience must be rejected, as other courts have found. *See Oregon*, 2026 WL 318402, at *9; *Weber*, 2026 WL 118807, at *9.

### B. DOJ did not provide a proper "purpose" for its demand.

DOJ's claim must also be dismissed because its demand failed to articulate a proper "purpose." Congress enacted the record retention provisions of Title III "to secure a more effective protection of the right to vote," *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). Specifically, Congress enacted Title III to buttress protections against racial discrimination in voting in the Civil Rights Act of 1957. *See* H.R. Rep. No. 86-956, at 3 (1960) (finding that while "some progress" has been made since the 1957 Act toward the "elimination of discrimination because of race," there was a "need for additional legislation to implement the enforcement of civil rights" and that

13

Title III was intended to aid DOJ "during any investigation it may conduct on complaints of a denial to vote."). But DOJ admits that it is not seeking Utah's statewide voter registration list for that reason. Rather, DOJ seeks "to ascertain [Utah's] compliance with HAVA and the NVRA." Compl. ¶ 35(C). However, as noted, *supra* Background § I, DOJ's tools for ensuring compliance with HAVA and the NVRA are found *in those statutes*; that supposed purpose is beyond the voting rights scope of the CRA.

In interpreting the "purpose" requirement, the Court should "account for both 'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'" *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (alteration in original) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)); *see also Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 441 (2019) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989))). The term "purpose" must be read in the specific context of the CRA of 1960—a law designed to buttress DOJ's enforcement and protection of voting rights, and particularly rights set forth in the 1957 Civil Rights Act. *See* H.R. Rep. No. 86-956, at 3. Title III's text creates an enforcement tool for DOJ to investigate potential violations of federal voting rights—not a general review power over State election systems. It directs States to preserve records "relating to any application, registration, payment of poll tax, or other act requisite to voting." 52 U.S.C. § 20701. Those categories are keyed to the substantive guarantees codified alongside them, which prohibit deprivations of "the opportunity to register to vote," including "registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted." 42 U.S.C. § 1971(a)–(e) (1958 & Supp. IV) (recodified at 52 U.S.C. § 10101(e)). The parallel is deliberate: the statute protects against

barriers to voting, and Title III ensures the preservation of records necessary to investigate and remedy violations of those protections.

Title III's textual structure aligns with its legislative history. In the Civil Rights Act of 1957, Congress tasked DOJ with protecting the "right of all qualified citizens to vote without discrimination on account of race." H.R. Rep. No. 86-956, at 7. Despite this charge, DOJ's efforts were stymied by "the refusal of some state and local authority to permit" inspection of certain voting records, *id.*, not to mention the intentional destruction of others, *see Gallion*, 187 F. Supp. at 853 n.4 ("State action such as taken by the Alabama legislature authorizing registrars to destroy their records is an excellent example."). DOJ had "no existing power in civil proceedings to require the production of [voter registration] records during any investigation" concerning "complaints of a denial to vote because of race." H.R. Rep. No. 86-956, at 7. Congress found that, without granting DOJ a "suitable provision for access to voting records during the course of an investigation," its ability to protect the right to vote was "rendered relatively ineffective." *Id.* Congress thus enacted Title III to allow federal authorities to investigate and protect against States' infringement on the right to vote; it had nothing to do with enforcing voter list maintenance statutes that would not even exist until many decades later. And tellingly, throughout its Complaint and correspondence, DOJ has yet to cite a single instance in the 65 years of Title III's existence in which a court read Title III to require the production of records in response to a demand that did not relate to "infringement or denial of . . . constitutional voting rights." *Lynd*, 306 F.2d at 228.[5]

---

[5] While some of the 1960s-era cases that interpreted Title III included language indicating broad deference to DOJ's statement of a "basis and . . . purpose" for requesting records, *see Lynd*, 306 F.2d at 226, they involved circumstances where Title III was being used for its intended purpose—investigations into the potential denial of voting rights—and are fundamentally different than the circumstances here, where DOJ has offered no justifiable basis to support the need for records to evaluate compliance with two other statutes. Indeed, this is decidedly not a case where DOJ is

The reason why is clear: "Title III was not passed as a tool for NVRA compliance." *Weber*, 2026 WL 118807, at *9. "[I]nvestigat[ing] list maintenance procedures" under the NVRA bears no relation to "the purposes for which Title III was enacted." *Oregon*, 2026 WL 318402, at *10. And "driver's license numbers and partial social security numbers were not required for voter registration until the passage of HAVA in 2002 so Congress could not have conceived for this highly sensitive information to be at the DOJ's disposal through the passage of Title III four decades prior." *Weber*, 2026 WL 118807, at *9. Thus, federal courts have dismissed DOJ's Title III claims as inconsistent with the statute's purpose of protecting voter rights. *Id.* at *8−10; *Oregon*, 2026 WL 318402, at *9−10; *cf. Bruce*, 298 F.2d at 863 n.2 (explaining that issues concerning "failures to purge voters who have moved away or have died,"—the ken of both the NVRA and HAVA—"do[] not bear any particular importance" to the Title III inquiry).[6]

Additional statutory context further confirms this. As the Lieutenant Governor explains in her own motion to dismiss, there is simply no reason to conclude that Congress intended for the CRA to operate as an enforcement mechanism for the NVRA or HAVA, *see* Def.'s Mot. Dismiss 18, and permitting DOJ to graft Title III on top of Congress's *actual* enforcement mechanisms in

---

making a demand "based upon information in the possession of the Attorney General tending to show that discriminations on the basis of race and color have been made with respect to registration and voting within [Utah]." *In re Coleman*, 208 F. Supp. at 199.

[6] These district courts hardly stand alone. In recent months, multiple district courts have quashed records demands when DOJ sought to assert statutory authority for investigations "far removed from those claimed purposes granted by Congress." *In re Subpoena No. 25-1431-014*, No. MC 25-39, 2025 WL 3252648, at *12, 17 (E.D. Pa. Nov. 21, 2025) (striking DOJ subpoena that "invoke[d] sweeping needs" for the information, which had "no relevance to the investigation Congress permitted or to the investigation the Department of Justice tells the world it is pursuing"); *see In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 237 (D. Mass. 2025) (quashing subpoena when DOJ "failed to show proper purpose" under the statutory scheme, rejecting the notion that "the Government's self-proclaimed say-so" is sufficient to "preclude any form of judicial review"); *cf. In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted] Bd. of Governors of the Fed. Rsrv. Sys. v. United States*, No. MC 26-12 (JEB), 2026 WL 710202, at *2 (D.D.C. Mar. 13, 2026) (similar)

those list maintenance statutes leads to anomalous results. It would make little sense for Congress to prescribe a disclosure rule in the NVRA itself—one which indisputably permits the sort of redactions DOJ resists here, *see Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025)—only to permit DOJ to adopt a *preferred* disclosure provision from elsewhere. Congress could have included a disclosure provision akin to Title III in the NVRA, but it chose not to and "[i]t is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.'" *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019) (second alteration in original) (quoting Scalia & Garner, *Reading Law* 94 (2012)).

Finally, even if ascertaining Utah's compliance with the NVRA and HAVA were a permissible "purpose" for invoking Title III, collecting uniquely sensitive information of every registered Utah voter is entirely unnecessary for that end. Both the NVRA and HAVA grant states broad discretion in list maintenance: State efforts under the NVRA must only be "reasonable," 52 U.S.C. § 20507(a)(4), and HAVA explicitly commits "specific choices . . . to the discretion of the State," *id*. § 21085. Here, the Lieutenant Governor has given DOJ the public version of Utah's entire statewide voter registration list—precisely what it is entitled to under the public disclosure provision in the NVRA. *See* Def.'s Mot. Dismiss 41; *see also* 52 U.S.C. § 20507(i). DOJ never explained why this data was insufficient—or why it believes it requires particularly sensitive information about voters. *See Weber*, 2026 WL 118807, at *9 (noting "DOJ states no reason why an *unredacted version* of California's voter list is necessary"); *Oregon*, 2026 WL 318402, at *10 n.4 (noting neither DOJ's "Title III demand nor any of its pleadings before this Court provide any reasonable explanation for why the Sensitive Voter Data in particular serves those purposes"). And the Complaint fails to make even the barest of allegations to suggest Utah is falling short of its limited obligations under the NVRA and HAVA.

17

Utah's full and unredacted voter file is simply not helpful or necessary to determine whether Utah "conduct[ed] a general program that makes a reasonable effort to remove the names of ineligible voters" by virtue of "death" or "a change in the residence of the registrant," 52 U.S.C. § 20507(a)(4) (NVRA); *see also id*. § 21083(a)(4) (HAVA). The unredacted voter file cannot tell DOJ anything about the list maintenance procedures that Utah undertook within its discretion under the NVRA and HAVA. If DOJ were to obtain the unredacted voter file, the data would be outdated almost immediately, and even if DOJ were able to use the data to identify voters who have moved or died since that single snapshot in time, it would not mean that Utah failed to make a "reasonable" list maintenance effort under the NVRA or HAVA. *Weber*, 2026 WL 118807, at *19 (explaining that "DOJ has not identified how the use of . . . driver's license numbers would help it understand whether California conducts a general program that makes a reasonable effort to remove persons from its voter rolls").

**V.      Title III does not prohibit Utah's redaction of sensitive voter information.**

As Lieutenant Governor highlights in her motion to dismiss, *see* Def.'s Mot. Dismiss 11, Utah law requires her to protect certain sensitive personal information that voters are asked to turn over to local registrars when registering to vote, *see* Utah Code §§ 20A-2-104(2)(a), 63G-2-302(1)(j). Even so, as far back as July 31, 2025, she offered DOJ "the most current version of the public statewide voter registration list." Def.'s Mot. Dismiss 41. That is all that DOJ is reasonably entitled to under the NVRA, *see* 52 U.S.C. § 20507(i), and to obtain more information it must show that Title III preempts state law that protects the privacy of Utah voters. Title III does no such thing.

Congress did not preempt state privacy laws that protect highly sensitive information when it enacted Title III. To the contrary, in the principal case DOJ cites in its Complaint, the Fifth

Circuit explained that Title III is intended to reach only "public records which ought ordinarily to be open to legitimate reasonable inspection," but not "confidential, private papers and effects." *Lynd*, 306 F.2d at 231. The information that DOJ seeks here is not of the type ordinarily "open to legitimate reasonable inspection," *id.*; rather, DOJ seeks obviously sensitive information that enjoys strong privacy protection under both federal and state law, *see, e.g.*, 5 U.S.C. § 552a; 18 U.S.C. § 2721; Utah Code §§ 20A-2-104(2)(a), 63G-2-302(1)(j).

Further confirmation that Title III does not preempt Utah's privacy protections may be found in the widespread judicial consensus, including within the Tenth Circuit, that the NVRA does not preempt state laws protecting the same highly sensitive categories of information that DOJ seeks here. *See, e.g.*, *Voter Reference Found.*, 160 F.4th at 1083 n.14 ("To the extent the State wishes to redact appropriate personal information before providing the voter data, the NVRA does not prohibit that limitation."); *Pub. Int. Legal Found, Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) ("[N]othing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File."); *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 268 (4th Cir. 2021) (recognizing that the NVRA permits redactions to "protect sensitive information"); *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (affirming order to redact social security numbers before disclosure under NVRA).[7]

---

[7] Several district courts throughout the country have held likewise. *See, e.g.*, *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022) (holding the NVRA permits "proper redaction of highly sensitive information"); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016) (holding the NVRA "does not require the disclosure of sensitive information that implicates special privacy concerns," including telephone numbers, partial social security numbers, partial email addresses, and birth dates); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 739 (S.D. Miss. 2014) (holding the NVRA "does not require the disclosure of unredacted voter registration documents, including voter registrant birthdates"); *Project Vote/Voting For Am., Inc. v. Long*, 752 F. Supp. 2d 697, 711 (E.D. Va. 2010) (holding the NVRA permits redacting social security numbers).

There is good reason for reading Title III's preemptive scope similarly to that of the disclosure provision within the NVRA. Both require disclosure of certain records relating to voter registration, and they employ similar language to do so. *Compare* 52 U.S.C. § 20703 (Title III: covered voting records held by a state election official "shall, upon demand in writing by the Attorney General . . . be made available for inspection"), *with* 52 U.S.C. § 20507(i) (NVRA: requiring that states "shall make [covered voting records] available for public inspection"). As such, the two statutory provisions should be interpreted similarly. *See, e.g.*, *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion) ("[W]hen Congress uses the same language in two statutes having similar purposes . . . it is appropriate to presume that Congress intended that text to have the same meaning in both statutes."); Scalia & Garner, *supra*, at 252 ("[L]aws dealing with the same subject . . . should if possible be interpreted harmoniously.").

This conclusion is reinforced by analyzing the choices Congress made when it enacted the NVRA and HAVA. Recall that DOJ's stated purpose for its demand for personal and highly sensitive voter information is purportedly to evaluate Utah's compliance with its list maintenance obligations under those statutes. Compl. ¶ 9. But if Congress had thought that it was necessary or desirable for DOJ to have access to a database containing highly sensitive information about every voter to enable it to ensure that the state was complying with its list maintenance obligations, it would have done so in the NVRA or HAVA. Congress did not do so. In fact, Congress created a different mechanism meant to ascertain states' compliance with list maintenance obligations: the NVRA inspection provision, located at 52 U.S.C. § 20507(i). Congress "envisioned" this inspection to allow for "critical scrutiny and public audits of voter data"—but nonetheless permitted the redaction of sensitive voter data. *Voter Reference Found.*, 160 F.4th at 1082 & 1083 n.14. Congress specified that records subject to inspection under that provision must include the

"names and addresses" of certain voters, 52 U.S.C. § 20507(i)(2), but stopped short of requiring states to go beyond that and disclose sensitive voter information. As for HAVA, it contains no disclosure provision at all, and instead explicitly confirms that voter registration lists must be "maintained" and "administered at the State level"—not by the federal government. 52 U.S.C. § 21083(a)(1)(A). Because the NVRA and HAVA reflect Congress' *actual* designs for DOJ in the realm of list maintenance, DOJ originally asserted claims under these laws in the earliest iterations of these lawsuits. But those claims floundered for the reasons just described. *See Weber*, 2026 WL 118807, at *14–15 (dismissing NVRA and HAVA claims); *Oregon*, 2026 WL 318402, at *6–7 (same); *Benson*, 2026 WL 362789, at *2–6 (same).

While DOJ has now wisely jettisoned those claims, and instead relies upon Title III alone, its effort to do so resembles trying to hammer a square peg into a round hole. It makes no sense to say that Congress intended Title III to preempt state privacy laws protecting highly sensitive information so that the federal government could assess compliance with voter list maintenance under the NVRA and HAVA, when the text of those statutes reflect the opposite—a congressional judgment to preserve such laws and to permit them to operate harmoniously with federal voter list maintenance law. *See Voter Reference Found.*, 160 F.4th at 1083 n.14.

**VI.     DOJ has failed to comply with the Privacy Act, which independently requires dismissal.**

The Privacy Act, codified at 5 U.S.C. § 552a, *et seq.*, "offers substantial protection[] regarding governmental use and retention of identifiable personal information." *League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. 25-cv-3501, 2025 WL 3198970, at *1 (D.D.C. Nov. 17, 2025). It does so in part by "adopt[ing] procedural safeguards when the records maintained by a federal agency, *i.e.*, a 'system of records,' are changed or used in a new way." *Id.* at *2 (quoting 5 U.S.C. § 552a(a)(5), (e)). In its rush to sweep up the sensitive information of every registered

Utahn, DOJ overlooked the Privacy Act's basic procedural requirements. As a result, the Privacy Act independently prohibits DOJ from obtaining Utah's statewide voter registration list.[8]

The Privacy Act imposes certain obligations on any agency that "maintains" a "system of records." *See* 5 U.S.C. § 552a(e). Both of those terms are given specific definitions by the statute. A "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *Id*. § 552a(a)(5); *see also id*. § 552a(a)(4) (defining "record" to include "any item, collection, or grouping of information about an individual that is maintained by an agency . . . that contains his name, or the identifying number . . . or other identifying particular assigned to the individual"). Utah's statewide voter registration list, which contains the names of all registered voters in the state as well as their voter registration identifiers and other identifying information, plainly qualifies as a "system of records" under the Privacy Act. The term "maintain" is defined to include "maintain, collect, use, or disseminate." 5 U.S.C. § 552a(a)(3). Accordingly, if DOJ were to "collect," "use," or "maintain" Utah's statewide voter registration list, the obligations imposed by subsection (e) are triggered. *See id*. § 552a(e)(4).

Most relevant here, "when an agency 'establish[es] or revis[es]' any 'system of records,' it must 'publish in the Federal Register . . . a notice of the existence and character of the system of records,' *i.e.*, a System of Records Notice (SORN)." *League of Women Voters*, 2025 WL 3198970,

---

[8] The Lieutenant Governor's motion to dismiss does not raise the Privacy Act a basis for dismissal, even though at least one court has dismissed DOJ's complaint on that basis. *See Weber*, 2026 WL 118807, at *17–18. Proposed Intervenors respectfully submit that this independent argument further weighs in favor of granting their intervention, as it reflects both Proposed Intervenors' acute and parochial privacy interests here, Mot. Intervene at 5–6, ECF No. 5, and also that Proposed Intervenors will aid the Court by pressing unique arguments that can aid in resolution of the case, *see id.* at 10; *see also Grutter v. Bollinger*, 188 F.3d 394, 400 (6th Cir. 1999) (finding inadequate representation prong satisfied where named defendant was unlikely to raise argument addressed by intervenor).

at *2 (alterations in original) (quoting 5 U.S.C. § 552a(e)(4)). A SORN must include, among other things, the name and location of the system, the categories of individuals on whom records are maintained in the system, the categories of records maintained in the system, and all "routine uses" to which the system can be put as well as the "categories of users and the purpose of such use." *Id.*

DOJ does not appear to dispute that the Privacy Act is applicable here, nor that DOJ must publish a SORN that would apply to Utah's statewide voter registration list. But its Complaint identifies no SORN that would permit DOJ's collection and maintenance of Utah's entire statewide voter registration list. Elsewhere it has pointed to a SORN entitled "JUSTICE/CRT – 001," the "Central Civil Rights Division Index File and Associated Records." *See, e.g.,* Opp'n Mot. Dismiss 14 n.10, *United States v. Oliver*, No. 25-cv-01193 (D.N.M. Jan. 27, 2026), ECF No. 51. That SORN, however, does not extend to a record such as a statewide voter registration list. It notifies the public that the categories of individuals covered by the system may include "[s]ubjects of investigations, victims, [and] potential witnesses," in addition to other categories not relevant here. *Privacy Act of 1974; System of Records*, 68 Fed. Reg. 47610, 47611 (Aug. 11, 2003). It simply is not plausible to understand that language to countenance the collection of personally identifying information of every registered voter in Utah (and, if DOJ gets its way, every registered voter in the country). Similarly, the SORN describes the categories of records in this system to "consist of case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the Civil Rights Division." *Id.* While this language would seemingly cover run-of-the-mill files maintained for specific Civil Rights Division investigations and litigation matters, it would be a startling construction of these terms to find that

23

they extend to a statewide (or nationwide) voter registration list that has never before been compiled by the federal government, as DOJ presses here.[9]

To hold that this SORN is sufficient under the Privacy Act to allow DOJ to collate sensitive information about every registered voter in Utah (or the country) would nullify the statute's "procedural safeguards" that "Congress enacted to . . . permit an individual to determine what records pertaining to him are collected, maintained, used, or disseminated by federal agencies" and to "ensure adequate safeguards are provided to prevent misuses of such information." *League of Women Voters*, 2025 WL 3198970, at *2 (citation modified). If DOJ wishes to take such a radical step and compile a federal database of the registered voters in the United States, the Privacy Act requires (at a minimum) that DOJ give the public adequate notice about its intention to do so, by publishing a SORN that accurately discloses the system of records it intends to create and the uses to which it will put that information. *Pippinger v. Rubin*, 129 F.3d 519, 527 (10th Cir. 1997) (noting the Privacy Act "requir[es] publication of the establishment and existence of a government-maintained 'system of records'" and that agencies "publish in the Federal Register notice of revisions in the character of existing systems of records" (emphasis in original) (citation omitted)); *see* 5 U.S.C. § 552a(e)(4); *id.* § 552a(e)(11) (requiring a 30-day notice period "of any new use or intended use of the information in the system," to "provide an opportunity for interested persons to submit written data, views, or arguments to the agency").

Finally, there is no impediment to the Court dismissing the Complaint based on DOJ's failure to comply with the Privacy Act. Even if the Court construes this argument as an affirmative

---

[9] DOJ also cites two other notices in the Federal Register, but they are irrelevant. The first simply adds an additional, allowable "routine use" to the SORN that is not applicable here. *See* 70 Fed. Reg. 43904, 43904 (July 20, 2005). The second adds a blanket routine use to all DOJ SORNs that is relevant in the event of a data breach. *See* 82 Fed. Reg. 24147 (May 25, 2017).

defense, the Court may still consider it on a motion to dismiss "when the facts establishing the affirmative defense are apparent on the face of the complaint." *Raja v. Ohio Sec. Ins. Co.*, 305 F. Supp. 3d 1206, 1239 n.10 (D.N.M. 2018). Here, the Complaint is devoid of any reference to a SORN, even though Utah identified the Privacy Act as a concern in its correspondence with DOJ about its demand. *See* Def.'s Mot. Dismiss 48. DOJ cannot identify any SORN that justifies its collection and maintenance of Utah's voter registration list, meaning that as a matter of law the Privacy Act prohibits DOJ from collecting Utah's statewide voter registration list.

### CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint with prejudice under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Dated: March 16, 2026

Respectfully submitted,
*/s/ David P. Billings*
David P. Billings
FABIAN VANCOTT

David R. Fox*
Christopher D. Dodge*
Walker McKusick*
ELIAS LAW GROUP LLP
*\* Pro Hac Vice Applications Pending*
*Counsel for Proposed Intervenors*

25

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of March 2026, the foregoing document has been filed electronically through the District of Utah ECF system, is available for viewing and downloading, and will be sent electronically to the counsel who are registered participants identified on the Notice of Electronic Filing and was sent to the following:

- **Brittany E. Bennett** brittany.bennett@usdoj.gov; german.bonilla@usdoj.gov
- **Christopher J Gardner**  christopher.gardner@usdoj.gov; german.bonilla@usdoj.gov

I hereby further certify that on this 16th day of March 2026, I caused a true and correct copy of the foregoing to be sent via email to the following:

- **Anikka Hoidal** ahoidal@agutah.gov; asiareid@agutah.gov,mchristesen@agutah.gov
- **Lance F. Sorenson** lancesorenson@agutah.gov; asiareid@agutah.gov,cdsl@agutah.gov; mchristesen@agutah.gov
- **David N. Wolf** dnwolf@agutah.gov; asiareid@agutah.gov; cdsl@agutah.gov; mchristesen@agutah.gov

*Counsel to Lt. Governor Deidre M. Henderson*

26