Jason M. Groth (16683)
Masami T. Kanegae (20270)
American Civil Liberties Union of Utah Foundation
311 South State Street, Suite 310
Salt Lake City, Utah 84111
(801) 521-9862
jgroth@acluutah.org
mkanegae@acluutah.org

William Hughes*
Theresa J. Lee*
Sophia Lin Lakin*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
whughes@aclu.org
tlee@aclu.org
slakin@aclu.org

*application for admission pro hac vice forthcoming

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>v.<br><br>DEIDRE M. HENDERSON, in her official capacity as Lieutenant Governor and chief election officer for the State of Utah,<br><br>    Defendant. | **MOTION OF THE LEAGUE OF WOMEN VOTERS OF UTAH TO INTERVENE AS DEFENDANTS**<br><br>Case No. 2:26-cv-166<br><br>District Judge David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ............................................................................................................... 2

ARGUMENT ..................................................................................................................... 5

I.    MOVANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT ................... 5

    A.    The Motion to Intervene Is Timely. ................................................................ 5

    B.    LWV-UT Has Concrete Interests in the Underlying Litigation. .................................... 6

    C.    Disposition of this Case May Impair the Interests of LWV-UT .................................... 8

    D.    Lieutenant Governor Henderson's Interests Are Different from Those of LWV-UT ...... 8

II.    IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION .................................................................................................. 9

CONCLUSION ................................................................................................................ 10

**TABLE OF AUTHORITIES**

**Cases**

*Berger v. North Carolina State Conference of the NAACP*,
597 U.S. 179 (2022)...................................................................................................... 9

*Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Department of Interior*,
100 F.3d 837 (10th Cir. 1996) ....................................................................................... 5

*Donaldson v. United States*,
400 U.S. 517 (1971)....................................................................................................... 6

*Kane County v. United States*,
597 F.3d 1129 (10th Cir. 2010) ................................................................................... 10

*Kane County v. United States*,
928 F.3d 877 (10th Cir. 2019) ............................................................................... 5, 8, 9

*Kobach v United States Election Assistance Commission*,
No. 13-cv-04095, 2013 WL 6511874 (D. Kan. Dec. 12, 2013)............................... 8, 9

*La Union del Pueblo Entero v. Abbott*,
29 F.4th 299 (10th Cir. 2022)........................................................................................ 9

*Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*,
619 F.3d 1223 (10th Cir. 2010) ..................................................................................... 6

*Public Interest Legal Foundation, Inc. v. Winfrey*,
463 F. Supp. 3d 795 (E.D. Mich. 2020) ........................................................................ 8

*San Juan County v. United States*,
503 F.3d 1163 (10th Cir. 2007) ..................................................................................... 6

*Selcuk v. Pate*,
No. 4:24-cv-00390-SHL-HCA, 2024 WL 5054961 (S.D. Iowa Nov. 3, 2024) ........... 7

*Texas v. United States*,
798 F. 3d 1108 (D.C. Cir. 2015)..................................................................................... 8

*United States v. Albence*,
No. 1:25-cv-1453-RGA (D. Del. Feb. 4, 2026) ............................................................ 2

*United States v. Albert Investment Co.*,
585 F.3d 1386 (10th Cir. 2009)...................................................................................... 5

*United States v. Amore*,
No. 1:25-cv-639-MSM-PAS (D.R.I. Jan. 6, 2026) ...................................................... 2

*United States v. DeMarinis*,
No. 1:25-cv-3934 (D. Md. Feb. 2, 2026) ................................................................ 2

*United States v. Evans*,
No. 1:25-cv-4403-RDM (D.D.C. Mar. 16, 2026) ...................................................... 2

*United States v. Galvin*,
No. 1:25-cv-13816-LTS (D. Mass. Jan. 6, 2026) ...................................................... 2

*United States v. Hanzas*,
No. 2:25-cv-903-MKL (D. Vt. Jan. 20, 2026) .......................................................... 2

*United States v. Matthews*,
No. 3:25-cv-3398-CRL-DJQ (C.D. Ill. Mar. 2, 2026) ............................................... 2

*United States v. Nago*,
No. 1:25-cv-522-LEK-RT (D. Haw. Jan. 5, 2026)..................................................... 2

*United States v. Oliver*,
No. 1:25-cv-1193-LF-JFR (D.N.M. Dec. 19, 2025) .................................................. 2

*United States v. Raffensperger*,
No. 1:26-cv-485-ELR (N.D. Ga. Jan. 30, 2026)....................................................... 2

*United States v. Scanlan*,
No. 1:25-cv-371-AJ (D.N.H. Jan. 5, 2026)............................................................. 2

*United States v. Schmidt*,
No. 2:25-cv-1481-CB (W.D. Pa. Jan. 16, 2026) ...................................................... 2

*United States v. Simon*,
No. 0:25-cv-3761-KMM-EMB (D. Minn. Jan. 6, 2026) ........................................... 2

*United States v. Thomas*,
No. 3:26-cv-21-KAD (D. Conn. Jan. 29, 2026)........................................................ 2

*United States v. Weber*,
No. 2:25-cv-9149-DOC-ADS (C.D. Cal. Nov. 19, 2025).......................................... 2

*United States v. Wisconsin Elections Commission*,
No. 3:25-cv-1036-JDP (W.D. Wis. Jan. 22, 2026).................................................... 2

iv

*Utah Association of Counties v. Clinton*,
255 F.3d 1246 (10th Cir. 2001)......................................................................... 5, 6, 9

*Western Energy Alliance v. Zinke*,
877 F.3d 1157 (10th Cir. 2017) ............................................................................ 6, 8

*WildEarth Guardians v. National Park Service,*
604 F.3d 1192 (10th Cir. 2010) ................................................................................ 8

*WildEarth Guardians v. United States Forest Service*,
573 F.3d 992 (10th Cir. 2009) .................................................................................. 9

**Statutes**

5 U.S.C. § 552a(e)(7)................................................................................................... 7

**Rules**

Federal Rules of Civil Procedure,
Rule 24(a).................................................................................................................. 5

Federal Rules of Civil Procedure,
Rule 24(b)(1)........................................................................................................... 10

Federal Rules of Civil Procedure,
Rule 24(b)(3)........................................................................................................... 10

Federal Rules of Civil Procedure,
Rule 24(c).................................................................................................................. 1

United States District Court for the District of Utah, Local Rules of Practice,
Rule 7-1(a)(1)........................................................................................................... 1

**Other Authorities**

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, NEW YORK TIMES, Sept. 9, 2025,
https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html............. 4

Press Release, United States Department of Justice, *Justice Department Sues Five Additional States for Failure to Produce Voter Rolls* (Feb. 26, 2026),
https://perma.cc/67UZ-KJFY................................................................................. 4

Tracker of Justice Department Requests for Voter Information, Brennan Center for Justice (updated Mar. 10, 2026),
https://perma.cc/3KHP-GDFT ............................................................................... 3

The League of Women Voters of Utah respectfully moves to intervene as Defendant pursuant to Rule 24(a) of the Federal Rules of Civil Procedure or, in the alternative, pursuant to Rule 24(b), and sets forth its legal argument and authorities below. *See* DUCivR 7-1(a)(1). Proposed Intervenor attaches a proposed motion to dismiss as Exhibit 1, by way of a response to the United States' Complaint, while reserving the right to supplement its response to the Complaint after intervention is granted. *See* Fed. R. Civ. P. 24(c).[1]

## INTRODUCTION

The United States seeks to force Utah to turn over voters' sensitive personal information and data. It has been widely reported that the United States will use this data to build an unauthorized national voter database and target voters for potential disenfranchisement, as part of efforts to "nationalize" elections.

Proposed Intervenor is the League of Women Voters of Utah ("LWV-UT"), a nonprofit, nonpartisan membership organization dedicated to empowering voters and defending democracy. LWV-UT has a strong organizational interest in this case because their grassroots, volunteer-led work engaging voters is threatened by the United States' request for sensitive, non-public voter data. The interests of LWV-UT's members are also at stake. LWV-UT's members include some of those groups who are under particular threat from the United States' requested form of relief, such as voters who are naturalized citizens, voters who have a felony conviction, and voters whose personal information is especially sensitive and who thus have heightened privacy interests.

LWV-UT is entitled to intervene as of right under Rule 24 because this motion is timely, because its and its members' rights and interests are at stake, and because those rights and interests

---

[1] Counsel for LWV-UT has conferred with the parties; the United States takes no position on Proposed Intervenor's motion and Lieutenant Governor Henderson does not object.

are not adequately represented by the existing Defendant—who, unlike LWV-UT, is a state actor, subject to broader political and policy considerations external to the legal issues presented in this case. LWV-UT's unique interests in this case, perspective, and motivation to interrogate the purpose of the United States' sweeping request for non-public Utah voter data will ensure the full development of the record and aid the Court in its resolution of this case. Intervention has been granted to similar intervenor groups, including other state Leagues of Women Voters, in materially identical lawsuits in more than a dozen other states.[2] The same reasoning applies here: Intervention as of right pursuant to Rule 24(a), or, in the alternative, permissive intervention pursuant to Rule 24(b), should be granted.

**BACKGROUND**

Beginning in May 2025, Plaintiff United States, through its Department of Justice ("DOJ"), began sending letters to election officials in at least forty-eight states, demanding the production of voter registration databases, with plans to gather data from all fifty states. *See* Tracker of Justice Department Requests for Voter Information, Brennan Ctr. for Just. (updated Mar. 10, 2026),

---

[2] *See, e.g.*, Order, *United States v. Evans*, No. 1:25-cv-4403-RDM (D.D.C. Mar. 16, 2026); Order, *United States v. Matthews*, No. 3:25-cv-3398-CRL-DJQ (C.D. Ill. Mar. 2, 2026); Order, *United States v. Albence*, No. 1:25-cv-1453-RGA, Dkt. No. 27 (D. Del. Feb. 4, 2026); Order, *United States v. DeMarinis*, No. 1:25-cv-3934, Dkt. No. 38 (D. Md. Feb. 2, 2026); Order, *United States v. Raffensperger*, No. 1:26-cv-485-ELR, Dkt. No. 14 (N.D. Ga. Jan. 30, 2026); Order, *United States v. Thomas*, No. 3:26-cv-21-KAD, Dkt. No. 40 (D. Conn. Jan. 29, 2026); Order, *United States v. Wis. Elections Comm.*, No. 3:25-cv-1036-JDP, Dkt. No. 53 (W.D. Wis. Jan. 22, 2026); Order, *United States v. Hanzas*, No. 2:25-cv-903-MKL, Dkt. No. 42 (D. Vt. Jan. 20, 2026); Order, *United States v. Schmidt*, No. 2:25-cv-1481-CB, Dkt. No. 105 (W.D. Pa. Jan. 16, 2026); Order, *United States v. Amore*, No. 1:25-cv-639-MSM-PAS (D.R.I. Jan. 6, 2026); Order, *United States v. Galvin*, No. 1:25-cv-13816-LTS, Dkt. No. 30 (D. Mass. Jan. 6, 2026); Order, *United States v. Simon*, No. 0:25-cv-3761-KMM-EMB, Dkt. No. 90 (D. Minn. Jan. 6, 2026); Order, *United States v. Nago*, No. 1:25-cv-522-LEK-RT, Dkt. No. 20 (D. Haw. Jan. 5, 2026); Order, *United States v. Scanlan*, No. 1:25-cv-371-AJ, Dkt. No. 23 (D.N.H. Jan. 5, 2026); Order, *United States v. Oliver*, No. 1:25-cv-1193-LF-JFR, Dkt. No. 25 (D.N.M. Dec. 19, 2025); Order, *United States v. Weber*, No. 2:25-cv-9149-DOC-ADS, Dkt. No. 70 (C.D. Cal. Nov. 19, 2025).

2

https://perma.cc/3KHP-GDFT.

On July 15, 2025, the DOJ sent a letter to Defendant Deidre Henderson, the Lieutenant Governor of Utah, the state's chief election official. *See* Compl. ¶ 19, Dkt. No. 1; Ex. 2, Letter of Michael E. Gates to Deidre Henderson (July 15, 2025) ("July 15 Letter"). The letter demanded an electronic copy of Utah's entire statewide voter registration list within fourteen days, citing the public records provision of the National Voter Registration Act ("NVRA"). Compl. ¶ 20; July 15 Letter at 1, 3. On July 31, Defendant responded, offering the requested list in redacted form. Compl. ¶ 21.

On August 14, the DOJ sent another letter, specifically demanding private voter information, including registrants' full name, date of birth, address, driver's license number, and the last four digits of the registrant's Social Security number. Compl. ¶ 22; Ex. 3, Letter of Harmeet K. Dhillon to Deidre Henderson (Aug. 14, 2025) ("August 14 Letter"). The letter relied on the Civil Rights Act of 1960. August 14 Letter at 2. On August 29, Defendant's office responded, noting privacy concerns and seeking more information about the intended use of the data, including whether the DOJ intended to share it outside of the DOJ. Compl. ¶ 26; Ex. 4, Letter of Ryan Cowley to Michael E. Gates (Aug. 29, 2025).

On December 2, the DOJ sent Defendant's office an email, attaching a proposed Memorandum of Understanding. Compl. ¶ 27; *see also* Ex. 5, Memorandum of Understanding (as executed by Texas). On December 9, Defendant's office responded, stating she would need more time to consider the request. Compl. ¶ 28.

On February 26, 2026, the United States responded by filing this lawsuit—one of at least thirty nearly-identical lawsuits that the DOJ has initiated against states and the District of Columbia across the country, seeking statewide voter files. *See* Press Release, U.S. Dep't of Just.,

3

*Justice Department Sues Five Additional States for Failure to Produce Voter Rolls* (Feb. 26, 2026), https://perma.cc/67UZ-KJFY. As detailed in the attached proposed motion to dismiss, according to extensive reporting, DOJ's request for private, sensitive voter data from Utah and other states appears connected to unprecedented efforts by the United States to construct a national voter database, and use untested database analysis methods in order to scrutinize state voter rolls. DOJ employees "have been clear that they are interested in a central, federal database of voter information."[3]

LWV-UT is a nonprofit, nonpartisan, grassroots membership organization founded in 1923 and headquartered in Salt Lake City. *See* Ex. 6, Declaration of Katharine Biele ("Biele Decl.") ¶¶ 5–6. LWV-UT is a 501(c)(3) organization and a Utah nonprofit corporation. *See id.* ¶ 6. LWV-UT is the Utah affiliate of the national League of Women Voters, an organization founded in 1920 that emerged out of the struggle for women's rights. *Id.* ¶ 6. LWV-UT was founded in 1923 and has 792 members across the state of Utah, including in seven local Leagues in Cache, Davis, Grand, Salt Lake, Utah, Washington, and Weber counties. *Id.* LWV-UT's mission is to encourage informed and active participation in government and to secure a stable democracy where citizens' voting rights are protected. *Id.* ¶ 5. Pursuant to this mission, LWV-UT registers voters, provides voter education, and conducts get-out-the-vote efforts. *Id.* ¶ 7. As part of its registration efforts, LWV-UT conducts registration drives, staffs voter registration tables at judicial naturalization ceremonies, and uses various means—including tabling, canvassing, advertising, mailings, and phone and text banking—to encourage Utahns to register and exercise their right to vote. *Id.* The success of these efforts, especially with respect to voter registration, depends on voters' trust that,

---

[3] Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

when they provide personal information to the State, that information will not be abused, their privacy will be respected, and their right to participate will be honored. *Id.* ¶ 10.

## ARGUMENT

### I.   MOVANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

In the Tenth Circuit, a party is entitled to intervene as of right under Fed. R. Civ. P. 24(a) upon establishing:

> (1) the application is timely;
> (2) the applicant claims an interest relating to the property or transaction which is the subject of the action;
> (3) the applicant's interest may as a practical matter be impaired or impeded; and
> (4) the applicant's interest is [not] adequately represented by existing parties.

*United States v. Albert Inv. Co.*, 585 F.3d 1386, 1391 (10th Cir. 2009) (cleaned up). The Tenth Circuit takes a "liberal" approach to allowing intervention, *see, e.g.*, *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 841 (10th Cir. 1996) (cleaned up), and "the requirements for intervention may be relaxed in cases raising significant public interests," *Kane Cnty. v. United States*, 928 F.3d 877, 890 (10th Cir. 2019) ("*Kane Cnty. II*") (citations omitted). *Accord Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) ("Federal courts should allow intervention where no one would be hurt and greater justice could be attained." (cleaned up)). Because LWV-UT easily meets Rule 24(a)'s requirements, the Court should grant their intervention as a matter of right.

#### A.   The Motion to Intervene Is Timely.

Timeliness is determined "in light of all of the circumstances." *Okla. ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1232 (10th Cir. 2010) (cleaned up). Three non-exhaustive factors are "particularly important: (1) the length of time since the movant[] knew of their interests in the case; (2) prejudice to the existing parties; and (3) prejudice to the movant[]." *Id*. (cleaned up); *see*

*also Clinton*, 255 F.3d at 1251 (considering "the relatively early stage of the litigation and the lack of prejudice to plaintiffs flowing from the length of time between the initiation of the proceedings and the motion to intervene").

This motion is indisputably timely. The United States filed this suit on February 26, 2026, and, upon receiving notice of the suit, LWV-UT promptly prepared this motion. *Cf. W. Energy All. v. Zinke*, 877 F.3d 1157, 1164–65 (10th Cir. 2017) (timeliness satisfied when "conservation groups moved to intervene just over two months" after the complaint was filed, resulting in a "lack of prejudice" to plaintiff). Defendant Lieutenant Governor Henderson recently filed a motion to dismiss, meaning that this litigation is at its earliest stages and the existing parties would not be prejudiced by intervention. *See* Def. Diedre Henderson First Mot. to Dismiss and Mem. in Supp., Dkt. No. 18. In contrast, LWV-UT's will be substantially prejudiced absent intervention, given the serious threats that the United States' lawsuit poses to LWV-UT and its members' fundamental rights.

### B.    LWV-UT Has Concrete Interests in the Underlying Litigation.

LWV-UT has a "sufficient"—i.e., a "significantly protectable"—interest in the litigation. *E.g.*, *Donaldson v. United States*, 400 U.S. 517, 531 (1971). A protectable interest is one that "would be impeded by the disposition of the action." *San Juan Cnty. v. United States*, 503 F.3d 1163, 1203 (10th Cir. 2007) (en banc) (cleaned up). Here, LWV-UT has multiple, independently sufficient interests that support intervention as of right.

*First*, LWV-UT and its members have a right to privacy in the sensitive voter data the United States seeks. The August 14 Letter demanded that Lieutenant Governor Henderson turn over voters' full name, date of birth, residential address, and driver's license number or SSN4. August 14 Letter at 2. This type of sensitive personal information is protected from disclosure by federal law, which prohibits the creation of a national voter database of the type that the United

6

States is reportedly seeking to assemble with the data it seeks. *See* 5 U.S.C. § 552a(e)(7) (prohibiting the creation or maintenance of any database "describing how any individual exercises rights guaranteed by the First Amendment"). These privacy interests are significant and implicate LWV-UT and its members, many of whom have heightened need for privacy regarding their personal information. *See* Biele Decl. ¶ 9.

*Second*, based on DOJ's similar data requests to other States, the data DOJ seeks is likely to be used to challenge the voter registration of certain Utahns. In its July 15 Letter, the DOJ requested information on particular groups that are likely to be targeted for purges. July 15 Letter at 2–3 (requesting information on "what actions the State is taking to ensure that voters who should not be on the voter rolls are being removed" and the number of voters removed from the rolls due to a felony conviction or lack of citizenship). A number of LWV-UT's members fall within the groups likely to be targeted. *See* Biele Decl. ¶ 9; *cf. Selcuk v. Pate*, No. 4:24-cv-00390-SHL-HCA, 2024 WL 5054961, at *8–9 (S.D. Iowa Nov. 3, 2024) (noting a state purge program attempting to identify noncitizens based on database-matching flagged 2,176 voters, of whom at least 88% were citizens eligible to vote, many of them naturalized citizens).

*Third*, LWV-UT as an organization has a protectable interest at stake because its core mission as an organization will be harmed if the relief sought is granted. *See* Biele Decl. ¶ 10 (noting the increased difficulty in convincing people to register to vote if their private information will be misused). Courts routinely find that nonpartisan public interest organizations should be granted intervention in election-related cases, demonstrating the significantly protectable interests such organizations have in safeguarding the electoral process. *See, e.g.*, *Texas v. United States*, 798 F. 3d 1108, 1111–12 (D.C. Cir. 2015); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795,

799–800 (E.D. Mich. 2020); *Kobach v U.S. Election Assistance Comm'n*, No. 13-cv-04095, 2013 WL 6511874, at *1–2 (D. Kan. Dec. 12, 2013) (unpublished). This case is no exception.

### C. Disposition of this Case May Impair the Interests of LWV-UT.

Not only does this lawsuit relate to LWV-UT's interests, but those interests would be impaired or impeded if the United States succeeds in obtaining its requested remedies. This third element "presents a minimal burden," requiring movants to show only that "it is possible that the interests they identify will be impaired." *W. Energy All.*, 877 F.3d at 1167 (cleaned up). Here, the United States seeks the irrevocable disclosure of private voter data to actors who may misuse it in any number of ways, including by mass-challenging or otherwise attacking Utahns' right to vote. This plainly threatens LWV-UT's interests.

### D. Lieutenant Governor Henderson's Interests Are Different from Those of LWV-UT.

LWV-UT's burden to show that "existing parties may not adequately represent its interest" is "minimal, and it is enough to show that the representation may be inadequate." *Kane Cnty. II*, 928 F.3d at 892 (cleaned up). LWV-UT easily meets this burden.

As the Tenth Circuit has emphasized, "the possibility of divergence of interest need not be great, and this showing is easily made when the representative party is the government." *Id.* at 894 (cleaned up). "[T]he government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public . . . ." *Clinton*, 255 F.3d at 1255–56. "[T]he government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor." *Id.*; *see also, e.g.*, *Kane Cnty. II*, 928 F.3d at 892–96 (interests of environmental group not adequately represented by United States); *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996–97 (10th Cir. 2009) (interests of coal company not adequately represented by United

States); *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 307–09 (10th Cir. 2022) (interests of political committees not adequately represented by governments defending election law); *Kobach*, 2013 WL 6511874, at *4 (voting rights organization could reasonably diverge interests from those of government defendants).

As a government official, Lieutenant Governor Henderson has a generalized interest in carrying out her office's legal obligations under federal and state laws, and in minimizing burdens on governmental employees and resources. She also must consider broader public policy concerns, in particular the need to maintain working relationships with federal officials. In contrast, LWV-UT brings a distinct, particular interest to this litigation, making the existing representation inadequate: the perspective of a nonpartisan, grassroots group whose sole commitment is to ensuring access to the ballot. There may be arguments and issues that Lieutenant Governor Henderson may not raise that are critical to LWV-UT. *Cf. Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 198 (2022) (reversing denial of intervention where state agency was "represented by an attorney general who, though no doubt a vigorous advocate for his clients' interests, is also an elected official who may feel allegiance to the voting public or share the Board's administrative concerns"). These diverging perspectives present a classic scenario supporting intervention. *See, e.g.*, *Kobach*, 2013 WL 6511874, at *4 (finding that applicants who had interests in protecting voter rights may have private interests that diverge from the public interest of an elections agency).

## II. IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION

Should the Court decline to grant intervention as of right, the Court should nevertheless use its broad discretion to grant permissive intervention. *See Kane Cnty. v. United States*, 597 F.3d 1129, 1135 (10th Cir. 2010). Under Rule 24, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of

9

law or fact." Fed. R. Civ. P. 24(b)(1). In exercising its discretion to grant permissive intervention, the district court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

For the reasons discussed *supra*, LWV-UT's motion is timely, there will be no delay or prejudice to the adjudication of the existing parties' rights, and LWV-UT's interests are not adequately represented by any of the existing parties. Moreover, LWV-UT's defense goes directly to the issues already presented in this lawsuit, such as (1) whether federal law permits the United States to force Utah to give it the personal information sought; (2) whether federal and state legal protections for individual privacy prohibit the disclosure of that information; and (3) whether the United States' motivations and its potential uses for the data sought are permissible. LWV-UT's distinct perspective on the legal and factual issues before the Court will thus complement or amplify Defendant's arguments and sharpen the issues and the quality of the record, aiding the Court in resolving the issues before it. Permissive intervention is appropriate.

## CONCLUSION

For the reasons stated above, the Court should grant the Motion to Intervene as Defendant as of right, or in the alternative, via permissive intervention.

Dated: March 19, 2026

Respectfully submitted,

/s/ Jason M. Groth

William Hughes*
Theresa J. Lee*
Sophia Lin Lakin*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004

* application for admission pro hac vice forthcoming

Jason M. Groth (16683)
Masami T. Kanegae (20270)
American Civil Liberties Union of Utah Foundation
311 South State Street, Suite 310
Salt Lake City, Utah 84111

*Counsel for Proposed Intervenor League of Women Voters of Utah*