IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DEIDRE M. HENDERSON, in her official capacity as Lieutenant Governor and chief election officer for the State of Utah,<br><br>Defendant. | No.: 2:26-cv-00166-DBB-DAO |

**DECLARATION OF ERIC NEFF IN SUPPORT OF MOTION TO COMPEL RECORDS DEMANDED PURSUANT TO THE CIVIL RIGHTS ACT OF 1960**

I, Eric Neff, declare, pursuant to 28 U.S.C. § 1746, that:

1.      I am currently Acting Chief to the Voting Section within the Civil Rights Division of the United States Department of Justice. I am fully and personally familiar with the facts stated herein. I make this declaration in support of the United States' Motion to Compel the production of election records pursuant to the Civil Rights Act ("CRA"), codified at 52 U.S.C. §§ 20701, *et seq*.

2.      The National Voter Registration Act, 52 U.S.C. § 20501, et seq., and the Help America Vote Act ("HAVA"), 52 U.S.C. § 20901, et seq., require each state to perform voter-list maintenance to ensure that only eligible voters remain on the statewide voter registration list. Under Section 11 of the NVRA and Section 401 of HAVA, the Attorney General is charged with the responsibility for enforcement of the list maintenance requirements of both statutes. See 52

1

U.S.C. § 20510(a) and 52 U.S.C. § 21111. This enforcement responsibility has been delegated to the Civil Rights Division by Congress.

3.      Section 8(i) of the NVRA requires states to make available "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters…." 52 U.S.C. § 20507(i)(1).

4.      HAVA requires that "an application for voter registration for an election for Federal office may not be accepted or processed by a State unless the application includes" the applicant's driver's license number, or if that is unavailable, the last four digits of the Social Security number. 52 U.S.C. § 21083(a)(5)(A)(i). That information is necessary to identify duplicate registration records, registrants who have moved, registrants who have died, and those who are not eligible to vote in federal elections.

5.      To ascertain whether a jurisdiction engages in practices that violate federal law (whether HAVA, the NVRA, the Voting Rights Act or any other one), the Attorney General needs to examine both applications to register to vote and the final voting rolls, including the electronic statewide voter registration list ("SVRL"), so as to assure herself that the applications are being properly processed and that reasonable and nondiscriminatory list maintenance efforts have been practiced.

6.      When the Civil Rights Division performs this individualized assessment, Utah's SVRL is compartmentalized and maintained by the Civil Rights Division separately from the SVRL of any other State. The maintenance, use, and destruction of those records is in full compliance with the requirements in the CRA, Privacy Act, and all other federal laws governing the records.

7.      On July 15, 2025, the Attorney General sent a letter to Defendant seeking information regarding Utah's compliance with federal election law.

8.      The July 15 Letter asked that Defendant produce, inter alia, a current copy of Utah's computerized statewide voter registration list ("SVRL") including all fields required by HAVA contained within the list. A response was requested within fourteen days.

9.      On July 31, 2025, Defendant responded to the July 15 Letter but offered only the publicly available redacted version of the SVRL to the Attorney General.

10.     On August 14, 2025, the Attorney General sent another letter to Defendant demanding that Utah provide a current, unredacted, electronic copy of its computerized statewide voter registration list.

11.     The August 14 Letter stated the basis of the demand as the CRA.

12.     The August 14 Letter stated the purpose of the demand was to "assess [Utah's] compliance with the [SVRL] maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501, et seq." It requested that Utah's response contain "all fields," including full name, date of birth, address, and driver's license or last four digits of social security number, "as required under HAVA to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i)."

13.     The August 14 Letter stated that the SVRL and all other federal election records that were produced would be maintained according to all applicable federal laws, including Section 304 of the CRA and the Privacy Act. The August 14 Letter also explained that "HAVA specifies that the 'last 4 digits of a social security number . . . shall not be considered to be a social security number for purposes of section 7 of the Privacy Act of 1974.'" 5 U.S.C. § 552a note; 52 U.S.C. § 21083(c).

14.     In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Department is now doing.

15.     On August 29, 2025, Defendant asked for additional information to address privacy concerns with the demand for federal election records.

16.     On December 2, 2025, the Attorney General sent Defendant an email, with a proposed memorandum of understanding ("MOU") attached, explaining it "satisfies all reasonable concerns regarding privacy and data security."

17.     On December 9, 2025, Defendant replied by e-mail that she would need additional time to consider the Attorney General's request and referenced a Secretaries of State meeting in the "next few weeks."

18.     To date, Defendant has not provided the records identified in the Attorney General's written demand for federal election records, including an unredacted SVRL with "all fields," necessitating this CRA action to compel their production.

19.     True and correct copies of the Justice Department correspondence dated July 15, 2025; August 14, 2025; and December 2, 2025; plus reply correspondence from the Lieutenant Governor dated July 31, 2025; August 29, 2025; and December 9, 2025 are attached to the United States' Memorandum in Support of Motion to Compel Production of Documents as Exhibits 1–6.

20.     Recent enforcement efforts by the Attorney General demonstrate the need for federal scrutiny, as Congress contemplated in authorizing the Attorney General to bring enforcement actions under HAVA and the NVRA.

4

21.     In 2025, North Carolina election officials admitted that the state "maintained and used a HAVA List that includes records that do not comply with the requirements for Federal elections under Section 303(a)(5)." United States v. N. Carolina Bd. of Elections, Consent J. & Order at 4 (E.D.N.C. Sept. 8, 2025). Specifically, the State's HAVA List included over one hundred thousand active voter records that were missing one of the identification numbers required by HAVA: the registrant's driver's license number, the last four numbers of the registrant's social security number, or a unique identifying number if the registrant had neither a driver's license nor a social security number. A true and accurate copy of the North Carolina Consent Judgment and Order is attached as Exhibit 7.

22.     The United States previously has pursued successful matters, including in litigation, to obtain statewide voter registration lists under Title III of the CRA.

23.     For example, in two of those CRA matters against Georgia and Texas, the United States obtained the SVRLs, including drivers' license numbers and last four digits of the registrant's social security number, to evaluate compliance with the NVRA, including that Act's list maintenance requirements.

24.     The Texas matter was resolved by a Memorandum of Understanding ("MOU") dated May 13, 2008, which required Texas to produce its SVRL to the United States. A true and accurate copy of the Texas MOU is attached as Exhibit 8.

25.     A true and accurate copy of the Complaint filed in United States v. Georgia, Case No. 1:06-cv-02442-CC (N.D. Ga. filed Oct. 12, 2006), is attached as Exhibit 9.

26.     On October 27, 2006, the Court entered a Consent Decree in Georgia requiring the state to produce its SVRL to the United States. A true and accurate copy of the Georgia Consent Decree is attached as Exhibit 10.

27.     The United States has offered states an MOU memorializing these requirements. As of March 26, 2026, seventeen states have provided their SVRL including: fourteen states that have provided their SVRLs without any MOU, two states that have agreed to provide their SVRL under the terms of the MOU, and one state pursuant to a settlement agreement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Washington, D.C. on March 27, 2026.

<u>/s/ Eric Neff</u>
Eric Neff