David P. Billings (11510)
**FABIAN VANCOTT**
95 South State Street, Suite 2300
Salt Lake City, UT 84111
Telephone: (801) 323-2205
dbillings@fabianvancott.com

David R. Fox*
Christopher D. Dodge*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
Telephone: (202) 968-4490
dfox@elias.law
cdodge@elias.law

Walker McKusick*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
Telephone: (206) 656-0177
wmckusick@elias.law

*Counsel for NAACP Intervenors*

*\* Admitted Pro Hac Vice*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH**

| | |
|---|---|
| THE UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DEIDRE M. HENDERSON, in HER official capacity as Lieutenant Governor and chief election officer for the State of Utah, <br><br> Defendant. | **NAACP INTERVENORS' RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE AND SUR-REPLY** <br><br> Case No. 2:26-cv-0166-DBB-DAO <br><br> District Judge David Barlow <br><br> Magistrate Judge Daphne A. Oberg |

DOJ's proposed sur-reply is improper and its motion for leave to file that sur-reply should be denied. *See* ECF Nos. 53, 53-1. Claiming to seek the opportunity to address two new district court orders that—like six district court orders before them—concluded DOJ had failed to state a claim under the Civil Rights Act of 1960 (CRA), DOJ sought consent from Lieutenant Governor Henderson and the two groups of Intervenor-Defendants to file a sur-reply. *See United States v. Bellows*, No. 1:25-cv-00468, 2026 WL 1430481 (D. Me. May 21, 2026) ("*Bellows*"); *United States v. Wis. Elections Comm'n*, No. 25-cv-1036, 2026 WL 1430354 (W.D. Wis. May 21, 2026) ("*WEC*"). Based on that representation, the NAACP Intervenors agreed to take no position on DOJ's request to address intervening authority.

DOJ's proposed sur-reply, however, reveals a bait-and-switch. *See* ECF No. 53-1 (Proposed Sur-Reply). The Proposed Sur-Reply does not significantly address the reasoning of *Bellows* and *WEC*; indeed, beyond the first paragraph and first footnote, it does not even cite those two decisions. *See* Proposed Sur-Reply at 1 & n.1. Moreover, the Proposed Sur-Reply entirely neglects the separate holding in *Bellows* that "monitoring compliance with the NVRA and HAVA" is not a suitable purpose "under Title III for the Civil Rights Act." *Bellows*, 2026 WL 1430481, at *9. That oversight is particularly egregious given that the Proposed Sur-Reply itself insists that is the precise purpose behind DOJ's demand to Utah. *See* Proposed Sur-Reply at 2 & n.2. The failure to even engage with this holding in *Bellows*—which itself is an independent basis for dismissal here, *see* ECF No. 51 (NAACP Reply) at 13–15—contradicts DOJ's claim that the purpose of its sur-reply is to address this intervening authority.

Rather than respond to the reasoning in *Bellows* and *WEC*, DOJ's Proposed Sur-Reply simply adds additional arguments and authorities that supposedly bolster its meritless position that a Statewide Voter Registration List (SVRL) "come[s] into the possession" of the Lieutenant

1

Governor, 52 U.S.C. § 20701, as required to satisfy the CRA's text. *But see* NAACP Reply at 15–20 (explaining why it does not). These arguments are nothing more than an effort to take a second bite at the apple. The *Benson* court first dismissed DOJ's parallel suit in Michigan on this basis *four months ago*. *See United States v. Benson*, 819 F. Supp. 3d 753, 768–70 (W.D. Mich. 2026) (opinion issued on February 10, 2026). DOJ therefore has had every reason to present argument on this topic since that time. Indeed, DOJ *preemptively* addressed this issue in its March 27 motion to compel, *see* ECF No. 36 at 14–19, and did so again in its May 20 response to the motions to dismiss, *see* ECF No. 49 at 4–9. That no doubt is because, by May 20, two district courts had already ruled against DOJ on this issue, *see Benson*, 819 F. Supp. 3d at 768–70; *United States v. Fontes*, No. CV-26-00066-PHX-SMB, 2026 WL 1177244, at *2–7 (D. Ariz. Apr. 28, 2026), and DOJ had extensively briefed the question across three different appellate briefs.[1] Simply put, DOJ had ample opportunity and incentive to raise these arguments well before *Bellows* and *WEC* issued. Accordingly, the Court should deny DOJ's effort to belatedly smuggle in new arguments in support of a disputed issue it has known about for months.

Regardless, DOJ's arguments do not move the needle. *First*, DOJ contends that the court in *Kennedy v. Lynd* contemplated the Civil Rights Act reaching internally-generated documents like the SVRL because it upheld a demand for "records prepared or compiled" by registrars. *See* Proposed Sur-Reply at 2 (citing *Kennedy v. Lynd*, 306 F.2d 222, 229 (5th Cir. 1962)). But nothing in *Lynd* suggests the parties there even contested the meaning of the phrase "come into the possession of," as the parties do here. *Lynd* therefore has no holding on the issue. Moreover, DOJ

---

[1] *See* Br. of the United States, *United States v. Weber*, No. 26-1232 (9th Cir. March 18, 2026), Dkt. 39.1 at 31–37; Br. of the United States, *United States v. Oregon*, No. 26-1231 (9th Cir. March 18, 2026), Dkt. 26.1 at 33–38; Br. of the United States, *United States v. Benson*, No. 26-1226 (6th Cir. March 24, 2026), Dkt. 25 at 13–22. DOJ also filed reply briefs addressing the issue in each appeal.

offers little support for concluding that the phrase "prepared or compiled" is synonymous with either "created" or "generated." *See* NAACP Reply at 16 n.7. Read in context, *Lynd* makes clear that language concerned whether the *incumbent* registrar had compiled the targeted records, as compared to inheriting them from a predecessor in office. *See Lynd*, 306 F.2d at 230 ("The District Court was likewise in error in refusing to require the Registrars to produce those records prepared or compiled prior to the incumbency of the present Registrar.").

*Second*, the Proposed Sur-Reply asserts without authority that *Lynd* compelled Southern election officials to "deliver[] . . . voter-registration lists" to DOJ. Proposed Sur-Reply at 2. But nothing in *Lynd* says that. Indeed, DOJ still cannot cite a single federal court decision holding that the Civil Rights Act reaches SVRLs, which is why it is forced to rely on irrelevant and distinguishable consent decrees that involve other statutes. *See* NAACP Reply at 14–15.[2]

*Third*, DOJ baselessly asserts that without access to voter-registration lists, the 1960s-era DOJ would have lacked authority to investigate the denial of voting rights to Black citizens. *See* Proposed Sur-Reply at 2–3. That unadorned claim simply ignores how civil rights investigations of the time operated. To start, there was rarely (if ever) any dispute about *whether* Black citizens had their voter registrations denied or accepted. During Registrar Lynd's term of office, for example, "[n]o Negro had been registered" despite forty applications, while no white voter had been rejected. *United States v. Lynd*, 301 F.2d 818, 821 (5th Cir. 1962). The issue was *why* Black voters' registration applications were denied and not *whether* their names appeared on the rolls.

---

[2] Indeed, it is implausible that Congress contemplated SVRLs at the time it enacted the CRA because few, if any states, had statewide voter registration lists at the time. Alabama, for example, did not create a statewide list until 1989, *see* Ala. Acts 1989, No. 89-649, p. 1279, § 1, and did not make it the "single, uniform, official, centralized . . . statewide voter registration list" until 2003 when HAVA compelled the creation of such a statewide list, *see* Ala. Act 2003-313, p. 733, § 2; § 17-4-210.

That is precisely why Congress was focused on the materials "requisite to voting" in a given election. 25 U.S.C. § 20701. As the NAACP Intervenors explained, Congress was specifically concerned about the differential treatment of Black and White applicants *with respect to their application* materials. *See* NAACP Reply at 17.[3] And DOJ's argument makes no sense in the present context either because Utah—like virtually every other State—has offered DOJ its publicly accessible voter registration list, which readily indicates *whether* a person is registered to vote or not. *See* Mot. to Dismiss at 16, ECF No. 18 (noting Utah "immediately offered to provide" the public version of the list to DOJ). The issue in this case is whether DOJ can compel production of a *completely unredacted* version of that list—*not* whether it can obtain sufficient information to simply determine whether a person is registered.

*Fourth*, DOJ points to 8 U.S.C. § 1454 as an example of a statute that uses the term "come into possession" in a manner consistent with DOJ's reading of the CRA. *See* Proposed Sur-Reply at 3. As DOJ acknowledges, the *Benson* court first relied upon this statute back in February, again underscoring that DOJ's Proposed Sur-Reply is simply a tardy attempt to patch up its arguments. *See Benson*, 819 F. Supp. 3d at 768 (citing 8 U.S.C. § 1454). In any event, DOJ's belated argument contorts § 1454. That statute says that if a person *loses* a certificate of naturalization, they can apply to the Attorney General for a new one. *See* 8 U.S.C. § 1454(a). It then clarifies that if a person—including the "applicant or any other person"—subsequently "come[s] into possession" of the document, they must surrender it to the Attorney General after the issuance of a replacement.

---

[3] For a comprehensive discussion of this topic, the NAACP Intervenors respectfully direct the Court to an amici curiae brief filed by several leading historians of the Civil Rights Era. *See* Amici Curiae Brief of Historians J. Morgan Kousser, Orville Vernon Burton, and James Peyton McCrary *United States v. Weber*, No. 26-1232 (9th Cir. April 24, 2026), Dkt. 79.1 at 20–26. As those historians explain, Congress recognized that "federal officials needed to be able to compare documents that Black and white applicants for registration had filled out and provided to local registrars." *Id.* at 21

*Id.* That phrasing is entirely consistent with the NAACP Intervenors' arguments for dismissal. It makes total sense to say that a person who *loses* possession of something may later come *back* into possession of it. But as NAACP Intervenors explain, *see* NAACP Reply at 18–19, the Lieutenant Governor *never* loses possession of the SVRL, which is a computerized database to which she has continuous access as a matter of state law, *see* Utah Code § 20A-2-502(1)(a); *see also* ECF No. 18 at 5–6, 14 (Lieutenant Governor explaining this in greater detail). Accordingly, far from supporting DOJ, § 1454 confirms that Congress deploys the phrase "come into possession" in specific contexts where a person *obtains* or *receives* something, like a lost certificate of naturalization.

*Fifth*, DOJ briefly claims that Congress presumably "expanded the Attorney General's enforcement authority" under the CRA when it later enacted the National Voter Registration Act (NVRA) and Help America Vote Act (HAVA). Proposed Sur-Reply at 4. Ironically, the rejection of this argument is the precise holding from *Bellows* that DOJ simply ignores, notwithstanding purportedly seeking a sur-reply to respond to that decision. As the *Bellows* court persuasively explained, Congress enacted specific enforcement mechanisms for the NVRA and HAVA *in those statutes*. *See* 2026 WL 1430481, at *7–8. That includes a pre-enforcement disclosure provision in the NVRA itself that DOJ purposefully foregoes relying upon here because there is no dispute it does not reach unredacted SVRLs. *See Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025).

In creating these enforcement tools, neither the NVRA nor HAVA even mention the CRA, never mind *incorporate* it into the "complex superstructure of federal regulation atop state voter-registration systems" created by those two laws. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 5 (2013). As the *Bellows* court rightly concluded, "the NVRA and HAVA create a comprehensive scheme for the creation and upkeep of states' computerized SVRLs, and for the

5

enforcement of the list maintenance requirements imposed by those statutes." 2026 WL 1430481, at *8. That comprehensive scheme does not permit DOJ to simply graft a separate disclosure law into the NVRA just because "it cannot obtain [SVRLs] under the specific statutes it is seeking to enforce," *i.e.*, the NVRA and HAVA. *Id.* The more natural reading of this comprehensive statutory scheme is that Congress did not intend for DOJ to be able to demand SVRLs on a whim for purposes of NVRA enforcement—consistent with the fact that both the NVRA and HAVA preserve *state* control over voter list maintenance. And if Congress desired the Civil Rights Act's disclosure provision to simply supplant the NVRA's own disclosure provision whenever DOJ wanted it to—even for the very purpose of NVRA enforcement—it presumably would have said so. *See Alexander v. Sandoval*, 532 U.S. 275, 290 (2001) ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.").

*Finally*, DOJ cryptically asserts in its Proposed Sur-Reply that it "[p]ossess[es] information indicating that states throughout the nation are not fully complying with federal-voter registration laws." Proposed Sur-Reply at 2. DOJ, however, does not identify *any* such State, cite any specific statutory provision, or explain how any unidentified State is not fully complying with the unspecified laws. Indeed, DOJ has not offered such evidence in *any* of the thirty-plus lawsuits it has filed against the States. Nor has DOJ actually filed any *substantive* NVRA or HAVA lawsuits in tandem with its nationwide dragnet to compile SVRLs. Regardless, it suffices for this case to note that DOJ has never asserted any such lack of compliance with federal law by Utah. *See generally* Compl.; *see also* ECF Nos. 36-2, 36-3 (pre-suit correspondence to Lieutenant Governor Henderson). Accordingly, DOJ still has failed to come forth with any "basis" for its demand here. *See* NAACP Reply at 10–13.

In sum, the Court should deny DOJ's improper motion for leave and, in any event, dismiss this case in due course for the reasons provided by the NAACP Intervenors.

Dated: June 12, 2026

Respectfully submitted,
*/s/ David P. Billings*
David P. Billings
FABIAN VANCOTT

David R. Fox*
Christopher D. Dodge*
Walker McKusick*
ELIAS LAW GROUP LLP
* *Admitted Pro Hac Vice*
*Counsel for NAACP Intervenors*

7

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of June 2026, the foregoing document has been filed electronically through the District of Utah ECF system, is available for viewing and downloading, and will be sent electronically to the counsel who are registered participants identified on the Notice of Electronic Filing and was sent to the following:

- **Brittany E. Bennett** brittany.bennett@usdoj.gov; german.bonilla@usdoj.gov
- **Christopher J Gardner**  christopher.gardner@usdoj.gov; german.bonilla@usdoj.gov

I hereby further certify that on this 12th day of June 2026, I caused a true and correct copy of the foregoing to be sent via email to the following:

- **Anikka Hoidal** ahoidal@agutah.gov; asiareid@agutah.gov,mchristesen@agutah.gov
- **Lance F. Sorenson** lancesorenson@agutah.gov; asiareid@agutah.gov,cdsl@agutah.gov; mchristesen@agutah.gov
- **David N. Wolf** dnwolf@agutah.gov; asiareid@agutah.gov; cdsl@agutah.gov; mchristesen@agutah.gov

*Counsel to Lt. Governor Deidre M. Henderson*

4910-6831-7876, v. 1