UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DEIDRE M. HENDERSON, in her official capacity as Lieutenant Governor and chief election officer for the State of Utah,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [18] DEFENDANT'S MOTION TO DISMISS, GRANTING [34], [46] INTERVENOR DEFENDANTS' MOTIONS TO DISMISS, AND DENYING [36] PLAINTIFF'S MOTION TO COMPEL**<br><br>Case No. 2:26-cv-00166-DBB-DAO<br><br>District Judge David Barlow |

This matter is before the court on Defendant Lieutenant Governor Deidre Henderson ("Lieutenant Governor")'s Motion to Dismiss,[1] Intervenor-Defendants National Association for the Advancement of Colored People and National Association for the Advancement of Colored People Tri-State Conference of Idaho, Nevada, and Utah (collectively, "NAACP")'s Motion to Dismiss,[2] and Intervenor-Defendant League of Women Voters of Utah ("LWV")'s Motion to Dismiss.[3] Defendants[4] filed these motions to dismiss the United States of America ("Attorney General")'s Complaint,[5] and in opposition to the Motion to Compel Federal Election Records Under the Civil Rights Act of 1960 ("Motion to Compel").[6]

[1] Def. Lieutenant Governor Deidre Henderson's Mot. to Dismiss ("Lieutenant Governor's MTD"), ECF No. 18, filed Mar. 13, 2026.
[2] Intervenors' Mot. to Dismiss ("NAACP's MTD"), ECF No. 34, filed Mar. 24, 2026.
[3] Mot. to Dismiss of the League of Women Voters of Utah ("LWV's MTD"), ECF No. 46, filed Apr. 22, 2026.
[4] The court refers to Defendant Lieutenant Governor and each intervenor-defendant collectively as "Defendants" unless otherwise specified.
[5] Compl., ECF No. 1, filed Feb. 26, 2026.
[6] United States' Mot. to Compel Fed. Election Rs. Under the Civil Rights Act of 1960 ("Mot. to Compel"), ECF No. 36, filed Mar. 27, 2026.

Having reviewed the briefing and supplemental authorities, and for the reasons that follow, the court DENIES the Attorney General's Motion to Compel and GRANTS the Defendants' motions to dismiss.

## BACKGROUND

This case stems from the Attorney General seeking to obtain Utah's statewide voter registration list.[7]

***Utah's Statewide Voter Registration List ("SVRL")***

Under Utah law, the Lieutenant Governor is the "chief election officer" that is "responsible to oversee, and generally supervise, all elections and functions relating to elections in the state."[8] As the chief election officer, she is required to "develop, manage, and maintain a statewide voter registration system to be used by county clerks to maintain an updated statewide voter registration database"[9]—the Utah SVRL. The SVRL is "regularly update[d]" on a weekly or monthly basis with any changes in a voter's name, address, or status.[10] The Lieutenant Governor is further required to "[r]egularly monitor the [SVRL]" and implement "security measures" to ensure the list's accuracy.[11]

Utah makes publicly available a version of its SVRL that includes "standard voter data."[12] This information includes a voter's name, voter identification number, age range, residential address, county of residence, mailing address, precinct and districts, party affiliation

[7] The court adopts the Attorney General's naming convention but recognizes that the parties refer to this record by many names, including a voter roll, statewide voter registration file, a database, or a system.
[8] UTAH CODE § 20A-1-105(1)(a)–(b).
[9] *Id.* § 20A-2-502(1)(a)
[10] *Id.* § 20A-2-502(1)(b).
[11] *Id.* § 20A-2-502(1)(c)–(d).
[12] *See id.* § 20A-2-603.

(if any), status, last date of voter registration record update, and voting history.[13] Utah does not make publicly available voter data belonging to "at-risk voter[s]" and other data contained in its non-public SVRL—for example, a voter's date of birth, driver's license number, last four digits of a Social Security number, and Help America Vote Act unique identifier.[14]

***The Attorney General's Letters***

On July 15, 2025, the Attorney General sent a letter to the Lieutenant Governor "to request information regarding the state's procedures for complying with the statewide voter registration list maintenance provisions of the National Voter Registration Act."[15] The letter requested a current copy of Utah's SVRL "including all fields required by [the Help America Vote Act] contained within the list."[16] The July 15 letter did not mention the Civil Rights Act of 1960 at all.[17] Two weeks later, the Lieutenant Governor responded to the Attorney General and produced the publicly available version of Utah's SVRL, which included redactions of certain information.[18]

On August 14, 2025, the Attorney General sent another letter to the Lieutenant Governor. Like the July 15 letter, it reiterated that its purpose was "to assess your state's compliance with the statewide VRL maintenance provisions of the National Voter Registration Act."[19] The letter acknowledged receipt of the public version of the SVRL and requested the SVRL be produced

---

[13] *Id.* § 20A-2-601(14).
[14] *Id.* § 20A-2-603(1)(b); Defendant Lieutenant Governor Deidre M. Henderson's Combined Opp'n to Plaintiff's Mot. to Compel & Reply in Support of Mot. to Dismiss ("Lieutenant Governor's Resp.") 15, ECF No. 50, filed June 3, 2026.
[15] July 15, 2025 Letter to Lieutenant Governor Henderson ("July 15 Letter") 1, ECF No. 36-2, filed Mar. 27, 2026.
[16] Compl. ¶¶ 19–20; July 15 Letter.
[17] *See id.*
[18] *See* Defendant Lieutenant Governor Henderson's Response to July 15 Letter 11, ECF No. 36-5, filed Mar. 27, 2026.
[19] August 14, 2025 Letter to Lieutenant Governor Henderson ("August 14 Letter") 1, ECF No. 36-3, filed Mar. 27, 2026.

again, this time with "*all fields*, including the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number."[20] Unlike the July letter, the August letter went beyond the National Voter Registration Act and Help America Vote Act to invoke Title III of the Civil Rights Act of 1960, specifically Sections 301 and 303.[21] Weeks later, the Lieutenant Governor responded with a request for additional information to address her privacy concerns with the Attorney General's demands and clarify the Attorney General's authority to make the demand.[22]

On December 2, 2025, the Attorney General sent the Lieutenant Governor a proposed memorandum of understanding ("MOU") and asserted that it "satisfie[d] all reasonable concerns regarding privacy and data security."[23] After requesting additional time to consider the proposed MOU, the Lieutenant Governor has not, to date, signed the proposed MOU or provided the Attorney General with Utah's unredacted SVRL containing "all fields."[24]

***The Elections Clause***

The United States Constitution's Elections Clause provides that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations . . . ."[25] The Supreme Court has described the Elections Clause as "impos[ing] on

[20] *Id.* at 2.
[21] *See id.* (citing 52 U.S.C. §§ 20701, 20703).
[22] *See* Compl. ¶ 26; Defendant Lieutenant Governor Henderson's Response to August 14 Letter, ECF No. 36-6, filed Mar. 27, 2026.
[23] Compl. ¶ 27; December 2, 2025 Email to Lieutenant Governor Henderson ("Proposed MOU"), ECF No. 36-4, filed Mar. 27, 2026.
[24] *Id.* ¶¶ 28–29.
[25] U.S. CONST. art. I § 4, cl. 1.

state legislatures the 'duty' to prescribe rules governing federal elections."[26] The Elections Clause "also guards 'against the possibility that a State would refuse to provide for election of representatives' by authorizing Congress to prescribe its own rules."[27]

***Title III of the Civil Rights Act ("Title III")***

Against the backdrop of "a course of racially discriminatory practices calculated to deprive [Black] citizens of their voting rights,"[28] Congress enacted the Civil Rights Act of 1960 ("CRA") "to protect access to the ballot in jurisdictions with patterns or practices of denying such access based on race."[29]

Title III of the CRA, under 52 U.S.C. § 20701, provides that "Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any [qualifying] election . . . all records and papers which come into [her] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election . . . ."[30] An election officer "who willfully fails to comply . . . shall be fined not more than $1,000 or imprisoned not more than one year, or both."[31] 52 U.S.C. § 20702 imposes penalties on any person "who willfully steals, destroys, conceals, mutilates, or alters any record or paper required by section 20701."[32]

Further, 52 U.S.C. § 20703 provides that "[a]ny record or paper required by section 20701 . . . to be retained and preserved shall, upon demand in writing by the Attorney General

---

[26] *Moore v. Harper*, 600 U.S. 1, 10 (2023) (quoting *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 8 (2013)).
[27] *Id.* (quoting *Arizona*, 570 U.S. at 8).
[28] *See United States v. Alabama*, 362 U.S. 602, 602 (1960) (describing the allegations before the Court).
[29] *Allen v. Milligan*, 599 U.S.1, 47 (2023) (Thomas, J., dissenting).
[30] 52 U.S.C. § 20701.
[31] *Id.*
[32] *Id.* § 20702.

. . . be made available for inspection, reproduction, and copying . . . . This demand shall contain a statement of the basis and the purpose therefor."[33] And 52 U.S.C. § 20705 addresses jurisdiction: "The United States district court for the district in which a demand is made pursuant to section 20703 . . . shall have jurisdiction by appropriate process to compel the production of such record or paper."[34]

***The National Voter Registration Act ("NVRA")***

"In 1993, Congress passed the National Voter Registration Act, 52 U.S.C. §§ 20501–20511, to address 'a backdrop of lackluster voter registration and political participation.'"[35] "The statute aims at regulating uniform voting laws and procedures because 'discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities.'"[36] The NVRA's "two main objectives" are "increasing voter registration and removing ineligible persons from States's voter registration rolls."[37]

To achieve the NVRA's stated purposes, States must generally "ensure that any eligible applicant is registered to vote in an election" and "provide that the name of a registrant may not be removed from the official list of eligible voters."[38] The statute also requires States to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" because of "death of the registrant" or "a change in the residence of the registrant."[39] In doing so,

---

[33] *Id.* § 20703.
[34] *Id.* § 20705.
[35] *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1079 (10th Cir. 2025) (quoting *Fish v. Kobach*, 840 F.3d 710, 720 (10th Cir. 2016)).
[36] *Id.* (quoting 52 U.S.C. § 20501(a)(3)).
[37] *Husted v. A. Phillip Randolph Inst.*, 584 U.S. 756, 761 (2018) (citing 52 U.S.C. § 20501(b)).
[38] 52 U.S.C. § 20507(a)(1), (3).
[39] *Id.* § 20507(a)(4).

the NVRA "requires States to make certain records related to their list-maintenance activities publicly available."[40] Specifically, "[e]ach State shall maintain for at least 2 years and shall make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters [with exceptions]."[41]

***The Help America Vote Act ("HAVA")***

In 2002, Congress enacted the Help America Vote Act to, among other things, "establish minimum election administration standards for States and units of local government with responsibility for the administration of Federal elections."[42] HAVA requires States to "implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level."[43] The statute requires an SVRL to "contain[] the name and registration information of every legally registered voter in the State" and for States to "assign[] a unique identifier to each legally registered voter."[44] To maintain the SVRL, HAVA also requires States to "perform list maintenance . . . on a regular basis,"[45] as well as establish "[a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters" and "to ensure that eligible voters are not removed."[46] HAVA

---

40 *Voter Reference Found.*, 160 F.4th at 1079.
41 52 U.S.C. § 20507(i)(1).
42 Help America Vote Act of 2002, Pub. L. No. 107-252, 116 Stat. 1666 (2002) (codified at 52 U.S.C. §§ 20901–21145).
43 52 U.S.C. § 21083(a)(1)(A).
44 *Id.*
45 *Id.* § 21083(a)(2)(A).
46 *Id.* § 21083(a)(4)(A), (B).

further provides that "[t]he specific choices on the methods of complying with [its] requirements . . . shall be left to the discretion of the State."[47]

***Procedural History***

In February of this year, the Attorney General initiated suit against the Lieutenant Governor and brought a single count for a violation of Title III of the Civil Rights Act of 1960, 52 U.S.C. § 20703.[48] The Attorney General has moved to compel its requested record under Title III "to assess Utah's compliance with [HAVA] and the [NVRA]."[49] The Defendants have, for their part, moved to dismiss the Complaint.

While the case has been pending before the court, numerous other federal courts have decided substantially similar cases brought by the Attorney General seeking SVRLs from states across the country.[50]

---

[47] *Id.* § 21085.
[48] *See* Compl.
[49] Mot. to Compel. 1–2.
[50] *See United States v. Benson*, 819 F. Supp. 3d 753 (W.D. Mich. 2026) ("*Benson I*"), *aff'd*, 179 F.4th 470 (6th Cir. 2026) ("*Benson II*"), *reh'g en banc denied*, 187 F.4th 462; *United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026), *appeal docketed*, No. 26-1232 (9th Cir. Mar. 3, 2026); *United States v. Oregon*, 828 F. Supp. 3d 1092 (D. Ore. 2026), *appeal docketed*, No. 26-1231 (9th Cir. Mar. 3, 2026); *United States v. Fontes*, 832 F. Supp. 3d 944 (D. Ariz. 2026), *appeal docketed*, No. 26-3609 (9th Cir. June 4, 2026); *United States v. Galvin*, 830 F. Supp. 3d 122 (D. Mass. 2026), *appeal docketed*, No. 26-1657 (1st Cir. June 9, 2026); *United States v. Amore*, 831 F. Supp. 3d 149 (D.R.I. 2026), *appeal docketed*, No. 26-1665 (1st Cir. June 9, 2026); *United States v. Bellows*, 834 F. Supp. 3d 113 (D. Me. 2026), *appeal docketed*, No. 26-1676 (1st Cir. June 15, 2026); *United States v. Wisc. Elections Comm'n*, 833 F. Supp. 3d 949 (W.D. Wisc. 2026), *appeal docketed*, No. 26-2217 (7th Cir. June 5, 2026); *United States v. DeMarinis*, No. SAG-25-3934, 2026 WL 1780586 (D. Md. June 18, 2026), *appeal docketed*, No. 26-1878 (4th Cir. July 13, 2026); *United States v. Schmidt*, 835 F. Supp. 3d 697 (W.D. Pa. 2026), *appeal docketed*, No. 26-2684 (3d Cir. July 7, 2026); *United States v. Scanlan*, 838 F. Supp. 3d 150 (D.N.H. 2026), *appeal docketed*, No. 26-1783 (1st Cir. July 7, 2026); *United States v. Bd. of Elections of N.Y.*, 1:25-CV-1338 (MAD/PJE), 2026 WL 1999921 (N.D.N.Y. July 10, 2026), *appeal docketed*, No. 26-2060 (2d Cir. July 24, 2026); *United States v. Warner*, 840 F. Supp. 3d 446 (S.D. W. Va. 2026), *appeal docketed*, No. 26-2262 (4th Cir. Sept. 15, 2026); *United States v. Koski*, No. 3:26CV42 (RCY), 2026 WL 2032532 (E.D. Va. July 14, 2026), *appeal docketed*, No. 26-2002 (4th Cir. July 29, 2026); *United States v. Oliver*, No. 1:25-cv-01193-JCH-JFR, 2026 WL 2031479 (D.N.M. July 14, 2026), *appeal docketed*, No. 26-2126 (10th Cir. July 27, 2026); *United States v. Thomas*, No. 3:26-cv-21 (KAD), 2026 WL 2070437 (D. Conn. July 17, 2026), *appeal docketed*, No. 26-2064 (2d Cir. July 28, 2026); *United States v. Adams*, 837 F. Supp. 3d 881 (E.D. Ky. 2026), *appeal docketed*, No. 26-5657 (6th Cir. July 24, 2026); *United States v. Caldwell*, No. 26-2025 (ZNQ) (JTQ), 2026 WL 2186515 (D.N.J. July 29, 2026), *appeal docketed*, No. 26-3085 (3d Cir. Aug. 20, 2026); *United States v. Matthews*, No. 25-cv-3398, 2026 WL 2212877 (C.D. Ill. July 31, 2026), *appeal*

## STANDARD

The parties dispute the appropriate standard of review to apply in this case. Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6).[51] They assert that the Attorney General has failed to state a claim for which relief can be granted. The Attorney General, however, asserts that the Motion to Compel under Title III of the CRA involves a summary proceeding where the typical procedural rules do not apply.[52] The court first determines whether the Federal Rules of Civil Procedure apply to this action.

The Attorney General argues that Title III of the CRA provides broad investigative power that is enforced "through a summary proceeding."[53] Largely relying on a Fifth Circuit case from the 1960s, the Attorney General describes this summary proceeding as a "severely limited" "expedited process" where "pleadings that are filed do not need to 'satisfy usual notions under the Federal Rules of Civil Procedure.'"[54] The court disagrees.

The court, instead, "agrees with other courts to have considered the issue that the statutory text of Title III demonstrates that the [c]ourt has the authority to determine whether the

---

*docketed*, No. 26-2695 (7th Cir. Aug. 17, 2026); *United States v. Griswold*, No. 25-cv-03967-PAB-TPO, 2026 WL 2235374 (D. Colo. Aug. 3. 2026), *appeal docketed*, No. 26-1326 (10th Cir. Aug. 18, 2026); *United States v. Evans*, No. 25-4403 (RDM), 2026 WL 2267774 (D.D.C. Aug. 6, 2026), *appeal docketed*, No. 26-5296 (D.C. Cir. Aug. 19, 2026); *United States v. Aguilar*, No. 3:25-cv-00728-ART-CLB, 2026 WL 2364502 (D. Nev. Aug. 14, 2026), *appeal docketed*, No. 26-5375 (9th Cir. Aug. 20, 2026); *United States v. Simon*, No. 25-cv-3761 (KMM/EMB), 2026 WL 2389778 (D. Minn. Aug. 17, 2026), *appeal docketed*, No. 26-2679 (8th Cir. Aug. 21, 2026); *United States v. Hanzas*, No. 2:25-cv-00903, 2026 WL 2754349 (D. Vt. Sept. 17, 2026); *United States v. Hobbs*, No. C25-6078-KKE, 2026 WL 2833713 (W.D. Wash. Sept. 22, 2026); *United States v. Raffensperger*, No. 1:26-cv-00485-VMC, 2026 WL 3002013 (N.D. Ga. Sept. 30, 2026).

[51] *See* Lieutenant Governor's MTD 1; NAACP's MTD 1; LWV's MTD 1.

[52] *See* Mot. to Compel 3–9.

[53] *Id.* at 1.

[54] *Id.* at 4, 8 & n.6 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962). Significantly, although the Attorney General's out-of-circuit authority treated a demand under 52 U.S.C. § 20703 as a "summary proceeding," it still recognized the court's authority to undertake the inquiry relevant here: "If . . . a genuine dispute subsequently arises as to whether or not any specified particular paper or record comes within this broad statutory classification of 'all records and papers * * * relating to any * * * act requisite to voting,' the Court would, of course, be open for its determination." *Lynd*, 306 F.2d at 226.

Attorney General has complied with the statutory requirements to compel the production of records described in § 20701" under the Federal Rules of Civil Procedure.[55]

To begin, nowhere in the language of Title III is there a command for courts to conduct only a summary proceeding where "usual notions under the Federal Rules of Civil Procedure" do not apply. "In construing a statute, the court must begin with the statutory language itself."[56] 52 U.S.C. § 20705 provides only that "the district court in which a demand is made pursuant to section 20703 . . . shall have jurisdiction *by appropriate process* to compel the production of such record or paper."[57] The statute does not define what Congress meant by "appropriate process," but this court is not the first to consider such language.

The Supreme Court in *United States v. Powell* interpreted similar language in a different statute to involve the Federal Rules of Civil Procedure.[58] The relevant statute in *Powell* provided that "If any person is summoned under the internal revenue laws . . . the United States district court for the district in which such person resides or is found shall have jurisdiction *by appropriate process* to compel such attendance, testimony, or production[s] . . . ."[59] But the Supreme Court did not consider the "by appropriate process" language to require a summary proceeding free from the Federal Rules of Civil Procedure. Instead, the Court reasoned that "[b]ecause [the statute] contains no provision specifying the procedure to be followed in

---

55 *Griswold*, 2026 WL 2235374, at *3 (citing *Weber*, 816 F. Supp. 3d at 1182; *Oregon*, 828 F. Supp. 3d at 1102; *DeMarinis*, 2026 WL 1780586, at *3); *see also Evans*, 2026 WL 2267774, at *4 (treating a similar request as enforcement of an administrative subpoena that requires the court to determine "if the inquiry is within the authority of the agency, the demand is not too indefinite, and the information sought is reasonably relevant" (citation modified)).
56 *Webb v. Hodel*, 878 F.2d 1252, 1255 (10th Cir. 1989).
57 52 U.S.C. § 20705 (emphasis added).
58 *United States v. Powell*, 379 U.S. 48, 57–58 & n.18 (1964).
59 26 U.S.C. § 7604(a).

invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply."[60] And because those rules apply, "[t]he proceedings are instituted by filing a complaint, followed by answer and hearing" where a person "may challenge the summons on any appropriate grounds."[61] To be sure, *Powell* was interpreting an IRS statute, whereas the statute here is the CRA. But the statutory language is the same and so is the logic.[62] The court follows *Powell*.

In short, the text of Title III does not support dispensing with the Federal Rules of Civil Procedure.[63] Accordingly, the court applies Federal Rule of Civil Procedure 12(b)(6) to determine whether the Attorney General made a valid demand for records under Title III of the CRA—at the very least, the court must determine whether the records requested by the Attorney General fall within the scope of the CRA.[64]

Under Federal Rule of Civil Procedure 12(b)(6), a court will dismiss an action that fails "to state a claim upon which relief can be granted."[65] In considering a motion to dismiss, "the court must take as true all well-pleaded facts, as distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings."[66] But because "a complaint cannot rely on labels or conclusory allegations,"[67] "a

---

[60] *Powell*, 379 U.S. at 58 n.18.
[61] *Id.* at 58 & n.18 (citation modified).
[62] See also *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 336 (2023) ("The Federal Rules are the default rules in civil litigation"); *cf.* Fed. R. Civ. P. 81 (a)(5) ("These rules apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute . . . .").
[63] *See, e.g.*, *Benson II*, 179 F.4th at 483 n.2 ("[B]inding precedent from the Supreme Court . . . carves out a role for the courts in reviewing civil investigative demands like the government's." (citing *Powell*, 379 U.S. at 58)).
[64] *See, e.g.*, *Griswold*, 2026 WL 2235374, at *3 ("[T]he Court can 'evaluat[e] the sufficiency of Plaintiff's allegations regarding Defendants' alleged failure to comply with Title III, including whether—applying Rule 12(b)(6) standards—a valid Title III demand was made in the first place." (quoting *Oregon*, 828 F. Supp. 3d at 1103)); *Evans*, 2026 WL 2267774, at *5 (considering the "validity of the government's records request" under Rule 12(b)(6)).
[65] Fed. R. Civ. P. 12(b)(6).
[66] *McNelis v. Douglas County Sch. Dist.*, 116 F.4th 1122, 1130–31 (10th Cir. 2024) (citation modified).
[67] *Id.* at 1131 (quoting *Greer v. Moon*, 83 F.4th 1283, 1292 (10th Cir. 2023)).

plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face'" to withstand a motion to dismiss.[68]

**DISCUSSION**

The Defendants move to dismiss on several grounds. The preliminary question is whether Utah's SVRL falls within the scope of Title III. Stated differently, the court first addresses whether the SVRL is a "record or paper" that the Lieutenant Governor "shall retain and preserve" and make available for inspection, reproduction, and copying upon a proper demand by the Attorney General.[69]

Defendants argue that Utah's SVRL is not a record that the Attorney General may demand under Title III because the SVRL is not a "record[] [or] paper[] which come[s] into [the Lieutenant Governor's] possession." Rather, Defendants assert the SVRL is created by the Lieutenant Governor, so it does not "come into [her] possession."[70] The Attorney General, on the other hand, argues that Title III does not support "such a limitation."[71] The Attorney General asserts that the Lieutenant Governor came into possession of "the relevant records in the course of carrying out her duties as the officer responsible for administering elections in Utah" by acquiring the SVRL and retaining it within her control.[72]

The court begins its inquiry with Title III's text. "In determining the scope of a statute, a court must begin with the statutory language itself."[73] The court's interpretive task is to "afford

---

[68] *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).
[69] *See* 52 U.S.C. §§ 20701, 20703.
[70] Lieutenant Governor's MTD 11–14; LWV's MTD 10–11; NAACP's Combined Reply in Support of Mot. to Dismiss & Opp'n to Pl.'s Mot. to Compel ("NAACP's Resp.") 15–20, ECF No. 51, filed June 3, 2026.
[71] Mot. to Compel 15.
[72] *Id.* at 16 (citation modified).
[73] *Wilson v. Stocker*, 819 F.2d 943, 948 (10th Cir. 1987).

the law's terms their ordinary meaning at the time Congress adopted them."[74] And in that endeavor, the court may "exhaust all the textual and structural clues bearing on that meaning."[75]

The relevant language is the text of 52 U.S.C. § 20701, which commands that "[e]very officer of election shall retain and preserve . . . all records and papers which *come into [her] possession* relating to any application, registration, payment of poll tax, or other act requisite to voting."[76]

The apparent ordinary meaning of the phrase "come into possession," at the time of Title III's passage, was to "obtain" or to "get or acquire."[77] As other courts have concluded, this phrase is an active verb that contemplates receipt from elsewhere.[78] Because the phrase "captures 'the act of taking, receiving, etc., rather than the resulting state of possession,'"[79] "come into [her] possession" would not normally refer to something the Lieutenant Governor "develop[s], manage[s], and maintain[s]."[80] As the Sixth Circuit explained, "[a]n ordinary English speaker would not say that she has come into possession of something that she created, established, and maintained."[81]

---

[74] *Nic-Chavez v. Garland*, 593 U.S. 155, 160 (2021).
[75] *Id.* (citation modified).
[76] 52 U.S.C. § 20701 (emphasis added).
[77] *Honeycutt v. United States*, 581 U.S. 443, 449 (2017) (quoting Random House Dictionary of the English Language 995 (1966)); *see also Huddleston v. United States*, 415 U.S. 814, 820 (1974) ("The word 'acquire' is defined to mean simply 'to come into possession, control, or power of disposal of.'" (quoting Webster's New International Dictionary (3d ed. 1966)); Webster's Ninth New College Dictionary (1985) (defining "receive" as "to come into possession of") *cited favorably by United States v. Dobbs*, 629 F.3d 1199, 1204 (10th Cir. 2011); *Benson II*, 179 F.4th at 478 (collecting similar dictionary definitions).
[78] *See, e.g.*, *Evans*, 2026 WL 2267774, at *6 (citing *Benson I*, 819 F. Supp. 3d at 768); *Bellows*, 834 F. Supp. 3d at 123.
[79] *Evans*, 2026 WL 2267774, at *6 (quoting *Have (v.)*, OXFORD ENGLISH DICTIONARY (sense II.10.a), https://www.oed.com/dictionary/have_v?tab=meaning_and_use#1805830 [https://perma.cc/7TZ9-VV9A] (last visited Oct. 12, 2026)).
[80] *Cf.* UTAH CODE § 20A-2-502(1) ("The lieutenant governor shall (a) develop, manage, and maintain a statewide voter registration system . . . .").
[81] *Benson II*, 179 F.4th at 479.

The remainder of the Title III text suggests that Congress intended "come into [her] possession" to take its ordinary meaning. Courts interpret statutes not only by "examining the language itself" but also looking to "the specific context in which that language is used[] and the broader context of the statute."[82] "[S]tatutory language cannot be construed in a vacuum."[83] The statute at issue commands an election officer to "retain and preserve" not "all records and papers which come into [her] possession" but those that "relat[e] to any application, registration, payment of poll tax, or *other act requisite to voting*."[84] "Each of these terms refers to something that the voter submits or does as part of the [voter] registration process."[85]

Accordingly, Utah's SVRL, a list that the Lieutenant Governor "develop[s], manage[s], and maintain[s],"[86] falls outside of the scope of Title III because it is not a "record" that "come[s] into [her] possession." This interpretation gives the words Congress used in Title III their ordinary meanings.

Additionally, the nature of an SVRL makes it a poor fit for the statute's scope. Utah's SVRL is a dynamic, constantly updated, electronic database that must change whenever relevant information is acquired by election officials.[87] Title III, however, does not contemplate such a dynamic record. The statute requires a record to be "retain[ed] and preserv[ed] . . . for a period of twenty-two months from the date of" an applicable election.[88] And it reinforces that command

---

[82] *Dekovic v. Rubio*, 169 F.4th 1002, 1013–14 (10th Cir. 2026) (citation modified).
[83] *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989).
[84] 52 U.S.C. § 20701 (emphasis added).
[85] *Benson I*, 819 F. Supp. 3d at 769–70; *see also Benson II*, 179 F.4th at 479 (explaining that "payment of a poll tax" operated as a "voter-registration document" in some states).
[86] UTAH CODE § 20A-2-502(1)(a).
[87] *See* Lieutenant Governor's Resp. 9 (citing UTAH CODE § 20A-2-502(1)(b) (requiring the Utah lieutenant governor to "regularly update the [SVRL] with information relevant to voter registration" on a weekly or monthly basis based on the information).
[88] 52 U.S.C. § 20701.

by subjecting to fine or imprisonment anyone who "steals, destroys, conceals, mutilates, or alters any record or paper required . . . to be retained and preserved."[89] Title III's textual clues suggest that Congress did not draft it with an SVRL or "the issue of list maintenance in mind."[90]

An interpretation that gives "come into [her] possession" its ordinary meaning also comports with the presumption against surplusage. "The canon against surplusage indicates that we generally must give effect to all statutory provisions, so that no part will be inoperative or superfluous—each phrase must have a distinct meaning."[91] The Attorney General's alternative interpretation would deny effect to some of the text. The Attorney General focuses on the terms "all records" and "relate to" in support of its view that because the Lieutenant Governor has possession of Utah's SVRL, she must comply with its demand under Title III.[92] But reducing 52 U.S.C. § 20301's "come[s] into [her] possession" requirement to simply "in her possession" would read words out of the statutory text. Indeed, simply using "in her possession" instead of "come[s] into [her] possession" is a readily apparent alternative that Congress could have chosen but did not. As the Supreme Court has observed, "we must give effect, if possible, to every clause and word of the statute."[93]

Broadening the inquiry to the NVRA and HAVA further suggests that Utah's SVRL is outside the scope of Title III. Where possible, courts are tasked with reading statutes to be in

---

[89] *Id.* § 20702.
[90] *Evans*, 2026 WL 2267774, at *8; *see also Benson I*, 819 F. Supp. 3d at 770 ("[T]he existence of a [SVRL] was not foreseeable to the Congress of 1960, and it is possible that legislators would have included such a list in the CRA's disclosure provisions had they imagined the possibility. But a court is not a telepathic time-traveler, and thus it cannot rewrite Congressional legislation to cover a situation that Congress may not have foreseen." (citation modified)).
[91] *Chevron Mining Inc. v. United States*, 863 F.3d 1261, 1284 n.15 (10th Cir. 2017).
[92] United States' Combined Resp. in Opp'n to Mot. to Dismiss ("AG's Resp.") 4–9, ECF No. 49, filed May 20, 2026.
[93] *Fischer v. United States*, 603 U.S. 480, 486 (2024) (citation modified).

harmony rather than conflict.[94] And "courts do not interpret statutes in isolation, but in the context of the *corpus juris* of which they are a part, including later-enacted statutes."[95] As other courts have recognized, reading 52 U.S.C. § 20701 as encompassing a database such as Utah's SVRL would pose a potential conflict with the NVRA and HAVA. While "[t]he NVRA and HAVA require 'an SVRL's constant alteration' to ensure that the SVRL contains accurate voter information," 52 U.S.C. § 20702 "criminalizes the alteration of 'any record or paper required by section 20701 . . . to be retained and preserved.'"[96] The court's reading, therefore, harmonizes these statutory provisions and avoids this potential conflict.

The Attorney General's additional arguments also do not persuade the court that Utah's SVRL falls within the scope of Title III.

First, the Attorney General cites *Judicial Watch, Inc. v. Lamone*,[97] in support of the argument that Title III covers records that an election officer merely possesses.[98] But the court is not persuaded that *Judicial Watch* warrants a different result here because that opinion involved an interpretation of the NVRA.[99] As noted earlier, the NVRA provides that "[e]ach state shall maintain . . . all records concerning the implementation of programs and activities conducted for

---

[94] *See, e.g.*, *In re Harline*, 950 F.2d 669, 675–76 (10th Cir. 1991) ("Our construction of [the statute] harmonizes the Bankruptcy Code with the clear policy and intent of ERISA." (citing *Shumate v. Patterson*, 943 F.2d 362, 365 (4th Cir. 1991) ("[F]ollowing the rule that, whenever possible, statutes should be read in harmony and not in conflict . . . ."))), *see also Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018) ("It is this Court's duty to interpret Congress's statutes as a harmonious whole rather than at war with one another.").
[95] *Watson v. Republican Nat'l Comm.*, 609 U.S 672, 683 (2026) (quoting *Branch v. Smith*, 538 U.S. 254, 281 (2003) (plurality opinion)).
[96] *Griswold*, 2026 WL 2235374, at *5 (first quoting *DeMarinis*, 2026 WL 1780586, at *5; then quoting 52 U.S.C. § 20702); *see also Benson II*, 179 F.4th at 480 ("Title III tells election officials to retain and preserve certain records and papers that come into their possession, and the NVRA and HAVA tell election officials to remove ineligible voters from statewide voter registration lists. We should not adopt a reading that would place election officials in violation of one federal law for trying to comply with others.").
[97] *Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019).
[98] Mot. to Compel 15–16.
[99] *See* 399 F. Supp. 3d at 434–36.

the purpose of ensuring the accuracy and currency of official lists of eligible voters," with exceptions.[100] Importantly, that statute does not limit records to those that "come into [an election officer's] possession" like Title III. Here, the Attorney General's letters both invoke the NVRA, but the sole count in the Complaint is for violation of Title III, not the NVRA.[101]

Second, the Attorney General cites *State of Alabama ex rel. Gallion v. Rogers*[102] and *Kennedy v. Lynd*[103] as support for a broader interpretation of the scope of Title III.[104] Neither of those courts was asked to decide the meaning of "come into [her] possession." In *Lynd*, the court summarily swapped "come into [her] possession" for "in the officer's custody" while discussing the 22-month retention period.[105] In *Gallion*, the court rejected Alabama's claims that the Attorney General's request was "vague" and the statute "uncertain."[106] "Because the scope of Section 20701 was not at issue in any of those cases, their sweeping descriptions of records covered by Title III are, at best, dicta and unpersuasive."[107] As the Supreme Court has emphasized, "[t]he language of an opinion is not always to be parsed as though we were dealing with the language of a statute."[108]

Third, the Attorney General argues that an interpretation that excludes records created by an election officer from the scope of Title III would undermine the CRA's purpose and produce

---

[100] 52 U.S.C. § 20507(i)(1).
[101] Compl. 7-8.
[102] *State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960).
[103] *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962).
[104] AG's Resp. 5–6, 8.
[105] 306 F.2d at 226–27.
[106] 187 F. Supp. at 855.
[107] *Evans*, 2026 WL 2267774, at *8 n.6; *see also Griswold*, 2026 WL 2235374, at * 5 (similar) *Aguilar*, 2026 WL 2364502, at *5 (similar); *Fontes*, 832 F. Supp. 3d at 951 (similar); *Bd. of Elections of N.Y.*, 2026 WL 1999921, at *10 (similar); *DeMarinis*, 2026 WL 1780586, at *5 (similar).
[108] *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 373 (2023) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979)).

"absurd results."[109] But the Supreme Court has warned that courts "have no warrant to elevate vague invocations of statutory purpose over the words Congress chose."[110] As the Sixth Circuit reasoned, "[p]ure policy considerations . . . do not constitute a proper method of statutory interpretation."[111] "Where the statutory language is plain," as it is in Title III, "that language controls as written, without regard to . . . judicial perceptions (or possible inadvertent misperceptions) of legislative purpose."[112]

But if apparent legislative purpose—rather than the statutory text—were the focus, the Attorney General's Title III argument would not grow stronger. The CRA was "designed to protect access to the ballot in jurisdictions with patterns or practices of denying voting access based on race."[113] "Because 'voter registration was the principal means to suppress Black voter participation,' Congress enacted the CRA to address these concerns, 'requiring states to retain and preserve all records pertaining to voter registration, voting applications, and payment of poll taxes.'"[114] In short, if congressional purpose were the decisional lens, it is clear enough that Title III was intended to address voter suppression.

Fourth, the Attorney General argues that even if the court gives "come into [her] possession" its ordinary meaning, Utah's SVRL should qualify under Title III because the Lieutenant Governor "'manages and maintains' the SVRL with *information* she receives from

---

[109] Mot. to Compel 18–19.
[110] *S.W. Airlines Co. v. Saxon*, 596 U.S. 450, 463 (2022).
[111] *Benson II*, 179 F.4th at 482 (quoting *Reichert v. Kellogg Co.*, 170 F.4th 473, 487 (6th Cir. 2026)).
[112] *United States v. Hernandez*, 655 F.3d 1193, 1197 (10th Cir. 2011); *see also Bowe v. United States*, 607 U.S. 13, 41 (2026) ("Purposive argument simply cannot overcome the force of the plain text." (citation modified)).
[113] *Allen*, 599 U.S. at 47 (Thomas, J., dissenting).
[114] *Hobbs*, 2026 WL 2833713, at *5 (quoting *Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*, 97 F.4th 120, 126 (3d Cir. 2024) (first); *Weber*, 816 F. Supp. 3d at 1175 (second)); *see also Evans*, 2026 WL 2267774, at *9 ("Notably, [an] Alabama law authorizing the destruction of rejected registration materials was repeatedly cited as the mischief that Title III was enacted to address." (citation modified)).

county clerks."[115] Not so. By Utah law, the Lieutenant Governor is tasked to "develop, manage, and maintain" the SVRL and "regularly update [it] with information relevant to voter registration"—in other words, she creates Utah's SVRL and facilitates its upkeep.[116] Even though individual county clerks relay *information* to the Lieutenant Governor,[117] she ultimately "develop[s]" Utah's SVRL. Whether the underlying information would constitute "records or papers which come into [her] possession relating to any application, registration, payment of poll tax, or other act requisite to voting" is not the question before the court.[118] The Attorney General clearly made a "demand in writing" for Utah's SVRL,[119] *not* the underlying information relayed by individual county clerks. Because the record the Attorney General seeks is "develop[ed]" by the Lieutenant Governor—and therefore does not "come in [her] possession"—it falls outside of Title III's ambit.

In sum, Utah's SVRL is not a record or paper which "comes into [the Utah Lieutenant Governor's] possession," so she need not make it "available for inspection, reproduction, or copying" by the Attorney General under Title III.[120]

---

[115] AG's Resp. 8 (emphasis added).
[116] *See* Utah Code § 20A-2-502(1).
[117] *See id.* § 20A-2-507.
[118] *See* 52 U.S.C. § 20701.
[119] *See* July 15 Letter 1 (requesting, "[p]ursuant to Section 20507(i) of the NVRA," "[t]he current electronic copy of Utah's computerized statewide voter registration list"); August 14 Letter 2 ("[T]he Attorney General is demanding an electronic copy of Utah' complete and current [S]VRL."). The language of 52 U.S.C. § 20703 requires a "record or paper" to "be made available for inspection, reproduction, and copying" only "upon demand in writing by the Attorney General."
[120] *See* 52 U.S.C. §§ 20701, 20703. Several other courts have reached the same conclusion. *See Hobbs*, 2026 WL 2833713, at *6; *Benson I*, 819 F. Supp. 3d 753, *aff'd*, *Benson II*, 179 F.4th 470; *Wis. Elections Comm'n*, 833 F. Supp. 3d 949; *Hanzas*, 2026 WL 2754349; *Simon*, 2026 WL 2389778; *Aguilar*, 2026 WL 2364502; *Evans*, 2026 WL 2267774; *Griswold*, 2026 WL 2235374; *Mathews*, 2026 WL 2212877; *Caldwell*, 2026 WL 2186515; *Adams*, 837 F. Supp. 3d 881; *Thomas*, 2026 WL 2070437; *Koski*, 2026 WL 2032532; *Bd. of Elections of N.Y.*, 2026 WL 1999921; *Scanlan*, 838 F. Supp. 3d 150; *Schmidt*, 835 F. Supp. 3d 697; *DeMarinis*, 2026 WL 1780586; *Bellows*, 834 F. Supp. 3d 113; *Fontes*, 2026 WL 1177244. *But cf. United States v. Benson*, 187 F.4th 462, 469–75 (6th Cir. 2026) (Griffin, J., dissenting from the denial of rehearing en banc); *id.* at 475–82 (Thapar, J., dissenting from the denial of rehearing en banc).

Because Utah's SVRL does not fall within the scope of Title III of the CRA, the court does not reach Defendants' other arguments for dismissal: whether the Attorney General failed to issue a demand stating a basis and purpose under 52 U.S.C. § 20703, whether Utah's privacy disclosure laws allow it to redact sensitive information in its production, and whether the Attorney General failed to comply with the Privacy Act.

**ORDER**

Accordingly, the Attorney General's Motion to Compel is DENIED,[121] and the Defendants' motions to dismiss are GRANTED.[122] The Attorney General's Complaint is DISMISSED with prejudice.[123]

Signed October 23, 2026.

BY THE COURT

David Barlow
United States District Judge

[121] ECF No. 36.
[122] ECF Nos. 18, 34, 46.
[123] The Attorney General has not asked the court for leave to amend its Complaint. But even if it did, leave to amend would be futile because of the court's conclusion that Utah's SVRL is not subject to a Title III demand. As a result, the court dismisses the Complaint with prejudice. *See Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) ("[A] dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." (citation modified)).